No. 54,514

STATE OF KANSAS, *Appellee,* v. EVERETT L. MARTIN, *Appellant.*

(670 P.2d 1331)

Opinion filed October 21, 1983.

*Zygmunt J. Jarczyk,* of Evans, Mullinix & Jarczyk, of Kansas City, argued the cause and was on the brief for appellant.

*John J. McNally,* chief deputy district attorney, argued the cause and *Robert T. Stephan,* attorney general, and *Nick A. Tomasic,* district attorney, were with him on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: Everett L. Martin appeals his jury convictions of one count of voluntary manslaughter (K.S.A. 21-3403) and one count of second-degree murder (K.S.A. 21-3402). Defendant had been charged with two counts of murder in the first degree (K.S.A. 21-3401) in the killing of two neighbors. Defendant was also convicted of one count of aggravated battery (K.S.A. 21-3414), one count of aggravated assault (K.S.A. 21-3410), and two counts of aggravated assault on a law enforcement officer (K.S.A. 21-3411). The latter four convictions have not been appealed. The facts will be set forth in detail.

On September 21, 1981, defendant's son Mike Martin (age 15) was playing football with a group of children in a neighborhood lot in Kansas City, Kansas. At one point during the game Kevin Keating (age 17), who had previously only been watching, ran onto the playing field and tackled Mike Martin after Mike caught a pass. Mike appeared to be injured and it was determined the

next morning that he had dislocated his shoulder. Terry Martin, another of defendant's sons, ran home ahead of Mike to inform his mother Mike had been injured. Defendant's wife informed him that Mike had been badly hurt. Defendant later testified that he had heard of Kevin Keating's reputation as being fairly skillful with a knife and for this reason, when defendant heard the news from his wife, he dressed and armed himself with a loaded handgun. The testimony as to Keating's reputation was not corroborated by any other witness at trial.

After arming himself, defendant went to the football field, confronted Kevin Keating and requested Kevin to accompany defendant back home to see how badly Mike Martin was hurt. Upon arriving at the Martin home, Kevin Keating and Everett Martin gathered on the front lawn with Mike Martin and Juanita Martin, defendant's wife. The four of them engaged in a conversation concerning the nature and extent of Mike's injuries. Testimony varied as to what happened next, but several witnesses indicated that an argument occurred between Kevin Keating and Mrs. Martin. At that point Kevin Keating and the defendant, Everett Martin, were approximately two to three feet apart. Kevin Keating then moved his arm in what at least one witness perceived as an attempt to place his hand on Mike Martin's shoulder to see how badly he was hurt. Defendant Everett Martin testified it appeared to him as though Kevin Keating moved his arm like he was reaching for a knife. This testimony was contradicted by other witnesses, including four members of defendant's family. At this point defendant pulled out his gun and shot Kevin Keating. Defendant testified that he was not intending to shoot or kill Keating, that it was simply a fast reflex action which shocked and surprised him. No knife was found on Kevin Keating's body.

Immediately after this shot was fired, defendant ran into his house and directed another son to call an ambulance. Defendant proceeded upstairs to his bedroom and armed himself with a carbine rifle and another handgun because, as he later testified, he believed that "in this kind of case police started shooting anyway" and as he had already shot Kevin Keating he felt he didn't have a chance, and couldn't see spending the rest of his life in jail. He also testified that he got his rifle out with some thought of shooting himself. Juanita Martin came upstairs into

the bedroom and told defendant not to do anything else, that he had already done enough damage. He responded by saying that he had already gone too far, and told her to get the kids and get out of the house.

During this time Timmy Keating, brother of the deceased victim, ran home and told his mother, Mary Keating, that there had been a shot and that Kevin was lying on the ground. Mrs. Keating and a neighbor, Rebecca Trober, arrived at the Martin premises to aid Kevin. Again, testimony conflicted as to what happened next. Mrs. Keating testified that after she determined Kevin was dead she exchanged words with Mrs. Martin, who remained inside at an upstairs window. Testimony of every defense witness other than defendant, including members of his family, also placed Mrs. Martin inside the house, upstairs in a bedroom at the time of the words with Mrs. Keating. However, defendant testified that after he spoke with his wife he thought she went back downstairs and outside. Looking out the window of his bedroom he saw the top part of Mary Keating, and assumed she was approaching his wife in what he perceived to be a threatening manner. He did not see his wife in the yard at that time and neither did he see Rebecca Trober, who was kneeling over Kevin's body. Intending only to scare the crowd away, defendant then fired two or three shots out the screened window toward the ground. Defendant testified he did not fire at any individual, that he aimed only at the ground, and he did not see Rebecca Trober until some time later. Notwithstanding his purported intentions, Mary Keating was shot in the arm and Rebecca Trober was killed. Immediately after being shot, Mrs. Keating ran towards the street and took cover behind a truck.

At trial Mrs. Keating disputed defendant's testimony that prior to the shooting she raised her hands in any manner or moved towards the house or Mrs. Martin, who she said was not even outside the house.

By this time on the tragic evening, the police had arrived on the scene and called for Everett Martin to surrender. Rather than do so, defendant fired at the area where the police were located in order to scare them away. One bullet creased an officer's hat and others hit the police vehicles. Later, after telephone contact was established between defendant and a crisis negotiator for

the police department, defendant was finally persuaded to give himself up.

Everett Martin gave the police a full statement admitting the shootings. He was charged with two counts of first-degree murder for the deaths of Kevin Keating and Rebecca Trober, one count of aggravated battery for the shooting of Mary Keating, and four counts of aggravated assault on law enforcement officers for shooting at the police after they arrived outside his residence. The jury convicted Martin respectively of voluntary manslaughter, second-degree murder, aggravated battery, aggravated assault, and two counts of aggravated assault on a law enforcement officer. Defendant was found not guilty on the last count of aggravated assault on a law enforcement officer.

Defendant's first claim on appeal is that the jury instructions submitted under the two counts of first-degree murder were erroneous and did not adequately present his defenses of self-defense or accidental killing. In connection with the killing of Kevin Keating, the trial court instructed the jury on murder in the first degree, murder in the second degree, voluntary manslaughter and involuntary manslaughter. The instruction on Martin's theory of self-defense read:

"The defendant contends that he shot Kevin Keating because he thought Kevin Keating was about to pull a knife. As to this defense you are instructed that a person is justified in the use of force to defend himself against an aggressor's imminent use of force to the extent it appears reasonable to him under the circumstances then existing.

"A person may lawfully use only such force, however, as may reasonably seem necessary to him in defending himself against an unlawful attack and serious bodily harm, but such person may not go further than appears reasonably necessary for such defense."

No objection was made to this instruction. Defendant now contends the instruction constitutes clear error because it did not contain the words "or another" following the word "himself" in each paragraph of the instruction. Defendant's position might have merit if there was any evidence that defendant fired the first fatal shot in defense of his son or wife. See K.S.A. 21-3211. However, at no time did defendant make any such assertion in the trial court and the meager evidence of any claim of self-defense was only as to the defendant himself. The instruction was a correct statement of the law based upon the evidence in this case and therefore cannot be considered clearly erroneous. The point is wholly without merit. K.S.A. 60-251(b). The in-

structions when considered together and as a whole, as they must be (*State v. Korbel*, 231 Kan. 657, 647 P.2d 1301 [1982]), adequately set forth defendant's theories of self-defense in the killing of Kevin Keating. Defendant's arguments with respect to a requested instruction on "accidental killing" are also found to be without merit.

Defendant also objects to the instructions given in connection with the death of Rebecca Trober. Again the court instructed the jury on murder in the first degree, murder in the second degree, voluntary manslaughter and involuntary manslaughter. No instruction on self-defense or defense of another was given. Defendant contends error in the involuntary manslaughter instruction and in the failure to give an instruction on defense of another. It appears that defendant's argument is that when he saw Mrs. Keating advancing in what he perceived to be a threatening manner, presumably towards Mrs. Martin, his shots were fired in defense of his wife. The arguments lack merit for at least two reasons. First, defendant's own testimony was that he fired out the window only to scare the people away and not with any intent to hit anyone. This precludes any argument that he intentionally shot at Mrs. Keating in defense of his wife. Second, the defense is not available under the factual situation which existed.

K.S.A. 21-3214(1) provides:

"The justification described in sections 21-3211, 21-3212, and 21-3213, is not available to a person who:

(1) Is attempting to commit, committing, or escaping from the commission of a forcible felony."

K.S.A. 21-3217 provides:

"A person is not authorized to use force to resist an arrest which he knows is being made either by a law enforcement officer or by a private person summoned and directed by a law enforcement officer to make the arrest, even if the person arrested believes that the arrest is unlawful."

It appears clear that there was no self-defense or "accidental killing" in the death of Rebecca Trober.

Defendant's final claim on appeal is that the trial court wrongfully refused to allow cross-examination of state witnesses regarding the Keating family's reputation for violence within the community. Defendant asserts that he didn't know Kevin Keating prior to the fateful day, but knew only the general reputation

of his family, and that this evidence is both necessary and relevant to prove defendant's state of mind because self-defense is claimed. He relies on *State v. Mason,* 208 Kan. 39, 490 P.2d 418 (1971), where we held that if the defendant claims self-defense, evidence of the victim's violent nature is admissible and may be inquired into by the defendant. The State doesn't deny that evidence regarding the reputation of Kevin Keating for violence is admissible and relevant, but points out that in this case the reputation of the victim's family was not the basis for the self-defense claim. We agree. Defendant Martin himself testified that after his wife told him his son was hurt,

"And so I got up and put on my clothes. Reached into a drawer and got a T-shirt, and uncovered my .38.

"And I had heard stories about Kevin being pretty bad about a knife—carrying a knife lately. And so I put my .38 on my belt; put a shirt over it and went down the stairs."

On appeal defense counsel states:

"In defendant's mind, it was the Keating family and not any particular member . . . which created this fear and apprehension of harm requiring the need for arming himself prior to confronting the actual member of the family who hurt the defendant's child."

This statement is simply not borne out by the record. The defendant was not prohibited from inquiring into Kevin's reputation, and the evidence at trial provided no basis for any broader inquiry. The trial court is granted broad discretion in controlling the scope of cross-examination and absent a showing of clear abuse of the exercise of that discretion there is no error. *State v. Carr,* 230 Kan. 322, 634 P.2d 1104 (1981). No abuse of discretion has been shown.

The judgment is affirmed.