(911 P.2d 1121)

No. 72,681

STATE OF KANSAS, *Appellee*, v. THOMAS D. HUNTER, *Appellant*.

Opinion filed
February 23, 1996.

*Thomas Jacquinot*, special appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Traci Rhone* and *Michael F. McElhinney*, assistant district attorneys, *Joan M. Hamilton*, district attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before BRAZIL, C.J., KNUDSON, J., and RON ROGG District Judge, assigned.

ROGG J.: Thomas D. Hunter appeals the durational and dispositional departure he received on his sentence for aiding a felon, K.S.A. 21-3812. Hunter contends there were no substantial and compelling grounds for the court's departure sentence and no independent reasons existed to support both a durational and a dispositional departure. We affirm.

In February 1994, several people were gathered in Hunter's apartment in Topeka. His brother, a juvenile, was playing with a gun and accidentally shot an adolescent girl in the head. The victim was immediately rendered unconscious, and Hunter contends that he believed that she was dead. The others in the apartment, with the exception of Hunter's girlfriend, fled the scene. Hunter did not want the body to be found in his apartment, so he dragged the unconscious girl into the alley behind his apartment and left her there. The temperature outside was 11 degrees. Hunter made no attempt to aid the victim or seek aid for her.

The police, responding to a call, discovered the victim in the alley not far from Hunter's apartment. She was still alive, although unconscious, when she was discovered but was pronounced dead at a hospital 3 days later.

In Hunter's initial statement to the police, he told them that his brother had shot the girl and everyone ran. In a second statement, he admitted that after the girl was shot, he dragged her to the dumpster and left her there, but stated it was due to the coercion of another witness. In a third statement, he admitted to acting on his own initiative, as well as cleaning up the blood and instructing his girlfriend to do the same, in order to prevent the police from discovering where the victim had been shot.

District Coroner George Thomas testified at sentencing that the victim probably had no chance of survival after the wound was

inflicted, but he could not testify that the type of injury would be fatal 100% of the time.

Hunter was initially charged with attempted second-degree murder and felony obstruction of legal process or official duty. After the girl's death, the attempted murder charge was amended to second-degree murder. Hunter pled no contest to the obstruction charge and an amended count of aiding a felon, K.S.A. 21-3812, while the murder charge was dismissed. Aiding a felon is a severity level 8, nonperson felony. Hunter's criminal history, two prior misdemeanors, placed him in grid box 8-H, with a presumptive sentence of 9 to 11 months' probation on the controlling charge of aiding a felon.

At Hunter's sentencing hearing, the court departed, both durationally and dispositionally, in sentencing defendant to 22 months in prison on the aiding a felon count. The basis for the district court's departure was that, pursuant to K.S.A. 21-4716(b)(2)(A), the victim had been particularly vulnerable due to her age and reduced physical capacity and, pursuant to K.S.A. 21-4716(b)(2)(B), Hunter's conduct was excessively brutal in a manner not normally present in that offense.

The court ruled that these were independent reasons which justified both a durational and a dispositional departure under K.S.A. 21-4719(c)(2). The court did not depart on Hunter's obstruction charge and sentenced him to 7 months in accord with the presumptive guidelines sentence.

Although the evidence supporting the district court's findings of fact is not controverted, Hunter contends that the facts of this case do not demonstrate substantial and compelling reasons for departure. The standard of review for sentencing departures is controlled by the language found in K.S.A. 21-4721(d):

"In any appeal from a judgment of conviction imposing a sentence that departs from the presumptive sentence prescribed by the sentencing grid for a crime, sentence review shall be limited to whether the sentencing court's findings of fact and reasons justifying a departure:

(1) Are supported by the evidence in the record; and

(2) constitute substantial and compelling reasons for departure."

See *State v. Richardson*, 20 Kan. App. 2d 932, 901 P.2d 1 (1995). "The term 'substantial'. . . refers to something that is real, not

imagined, something with substance and not ephemeral. The term "compelling" implies that a court is forced, by the facts of a case, to leave the status quo or go beyond what is ordinary." *State v. Rhoads*, 20 Kan. App. 2d 790, 799, 892 P.2d 918 (1995).

The reason for dispositional departure given by the district court was that the victim was particularly vulnerable due to her age and physical condition. She was incapacitated due to having suffered a gunshot wound to the head and was vulnerable due to her reduced physical capacity. She was unconscious and on the verge of death. Her condition was known by Hunter; this was the cause for his actions.

Integrally related to the victim's reduced physical capacity, and mentioned by the court in a laundry list of factors, was defendant's failure to aid the victim. Generally, there is no legal duty to rescue or render aid to another in peril. *People v. Oliver*, 210 Cal. App. 3d 138, 147, 258 Cal. Rptr. 138 (1989). Special types of relationships, however, have been found to create a duty to render aid, such as parent/child, employer/employee, common carrier/passenger, innkeeper/guest, possessors of land who hold it open to the public, etc. See Restatement (Second) of Torts § 314A (1964). No Kansas case seems helpful on this issue. In *Hutchinson v. Dickie*, 162 F.2d 103 (6th Cir. 1947), the Sixth Circuit ruled that a private shipowner did have a duty to rescue an invited guest upon his cruiser who had fallen overboard. The court reasoned that the ship was the only instrumentality that could prevent the guest from drowning. The court recognized that "[t]his was certainly a moral duty, universally recognized and acted upon." 162 F. 2d at 106. This case seems similar to *Dickie* in that Hunter, as lessee or possessor of the apartment in which the victim was shot, controlled access to her after the others fled. Beyond this possible legal duty, the additional reasons given by the court of a moral nature provide a substantial and compelling reason for departure.

Although the moral duty to assist an injured and helpless victim is not listed among those factors in K. S.A. 21-4716 (b)(2), that statute provides that "the following nonexclusive list of aggravating factors may be considered," indicating clearly that other factors

may be considered for departure. The district court was correct in considering this factor as one of the grounds for departure.

Hunter argues that the district court erred in imposing both a dispositional and a durational departure. K.S.A. 21-4719(c) provides:

"When a sentencing judge imposes a prison term as a dispositional departure: . . . (2) the term of imprisonment shall not exceed the maximum duration of the presumptive imprisonment term listed within the sentencing grid. Any sentence inconsistent with the provisions of this section shall constitute an additional departure and shall require substantial and compelling reasons *independent* of the reasons given for the dispositional departure." (Emphasis added.)

Hunter believes the reason given by the court for the second departure was not independent of that given for the first departure.

We believe the Kansas Legislature intended for sentencing courts to provide separate reasons for both durational and dispositional departures. This intent can be discerned from the language of K.S.A. 21-4719(c), as well as an examination of the sentencing guidelines statutes of other states. The legislative history of the KSGA indicates that Kansas, in part, looked to the sentencing statutes of Minnesota, Oregon, and Washington in formulating our sentencing guidelines. Coates, Summary of the Recommendations of the Sentencing Commission, p. 6 (Report to the Senate Committee on Judiciary, January 14, 1992). The Minnesota Sentencing Guidelines similarly provide that making a dispositional and durational departure are two separate departures, both of which require separate substantial and compelling reasons. Minnesota Sentencing Guidelines, Minn. Stat. Ann. § 244 App., Comment II.D.02 (West 1995 Supp). Minnesota courts, however, have not yet addressed an issue similar to the present one.

The district court's basis for durational departure was that Hunter's conduct during the commission of the offense manifested excessive brutality. Under this general umbrella the court identified a number of factors, including that the girl was still alive at the time Hunter acted; Hunter's conduct exhibited a callousness for the sanctity of human life; the girl deserved to be treated with dignity and respect in her death process; Hunter acted in a way

which further injured the girl's body, dragging her body down the stairs and through an alley; and by leaving the girl in the alley in freezing temperatures, he threatened to take from the girl's family any comfort they were to receive from donating her organs.

Clearly, much of what the district court considered excessive brutality in this case was strongly tied to the fact that the victim had been rendered unconscious by a gunshot wound to the head. This does raise a legitimate question as to whether the two departure factors given by the court were "independent" of each other. We hold, however, that Hunter's excessive brutality in his actions taken with the victim proved a substantial reason for departure independent of his failure to render aid to her. The record of the trial court's sentencing hearing demonstrates that the court relied on and found sufficient "independent" factors to support both a dispositional and durational departure.

Affirmed.