No. 74,873

STATE OF KANSAS, *Appellee*, v. MYRNA EISELE, *Appellant*.

(936 P.2d 742)

Opinion filed April 18, 1997.

*Randall L. Hodgkinson*, special appellate defender, argued the cause, and *Stephen C. Moss*, special appellate defender, and *Jessica R. Kunen*, chief appellate defender, were on the brief for appellant.

*Julie A. McKenna*, county attorney, argued the cause, and *Christina Pellant*, assistant county attorney, and *Carla J. Stovall*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Defendant Myrna Eisele appeals the trial court's imposition of a departure sentence at her conversion hearing after her plea of no contest to aggravated assault of a law enforcement officer, K.S.A. 21-3411 (Ensley 1988). The district court granted an upward durational departure because the fact that she threatened to kill, had the means to do so, and fired a gun at the law enforcement officer manifested "excessive brutality to the victim" in a manner not normally present in aggravated assault. The Court of Appeals affirmed. We granted the defendant's petition for review to determine if the discharge of a firearm during the commission of an aggravated assault of a law enforcement officer always manifests excessive brutality to the victim.

On October 26, 1992, Richard Henson, a Salina police officer, observed Eisele speeding and driving her vehicle in an erratic manner. Henson followed Eisele's car into a parking lot. After Eisele exited her car and started walking toward the store, Henson ordered Eisele to stop and asked to see her driver's license. Eisele turned toward Henson and approached him with her hand in her purse. She shouted at Henson that she had a gun and was going to kill him. Eisele pulled a gun from her purse and repeated her threats. She then turned and headed toward the store. Henson drew his weapon, took cover behind a car, and ordered Eisele to stop. Eisele turned back, yelled that she was going to kill Henson, and fired one shot in his direction.

Eisele, who had a history of mental imbalance, was arrested and charged with attempted first-degree murder of Henson. She was found incompetent to stand trial on December 2, 1992, and was

committed to Larned State Security Hospital. Subsequently, the State filed an amended information charging Eisele with aggravated assault on a law enforcement officer. The amended information alleged that Eisele unlawfully attempted to do bodily harm to a uniformed city law enforcement officer by assaulting him with a deadly weapon while he was engaged in the performance of his duty, resulting in immediate apprehension of bodily harm to the officer and with the apparent ability to cause such harm.

Eisele was found competent to stand trial on February 12, 1993, and discharged on March 4, 1993. After her return from Larned State Security Hospital, plea negotiations with the State resulted in Eisele pleading no contest to aggravated assault on a law enforcement officer.

At Eisele's sentencing hearing, the district court imposed a sentence of 5 to 15 years. Eisele filed a "motion for hearing regarding conversion of sentence under Kansas sentencing guidelines act." She alleged she had been denied the retroactive application of the sentencing guidelines to her indeterminate sentence. Subsequently, the State filed a motion for departure. After a hearing, the district court found that Eisele was entitled to a conversion of her sentence to a guidelines sentence. The court also granted the State's motion for upward durational departure and imposed a sentence of 42 months, which was later modified to 36 months due to the court's error in identification of the mid-line presumptive sentence. In sentencing the defendant, the court's sole reason for imposing a departure was excessive brutality to the victim in a manner not normally present in the offense. The court stated:

"The probable cause affidavit filed in this litigation and the presentence investigation report both narrate the underlying factual circumstances of the defendant's crime. [Eisele] not only committed an aggravated assault. She threatened to kill the police officer, had the means to do so, and in fact fired at him. The court finds there was excessive brutality to the victim in the commission of this criminal offense and as a result there is a substantial and compelling reason to grant the upward departure requested by the State."

Eisele appealed, arguing that the facts of her crime, particularly the discharge of the weapon, were no different than the usual criminal conduct inherent in the crime of aggravated assault of a law

enforcement officer. The Court of Appeals affirmed in an unpublished opinion filed October 18, 1996, determining that the facts supported a finding of excessive brutality because they went beyond an intentional "attempt to do bodily harm" as defined in K.S.A. 21-3408. The appellate court concluded by stating: "Discharge of a weapon is not conduct inherent in the commission of an aggravated assault, it is not a statutory element of the crime of aggravated assault on a law enforcement officer, and it does not serve to subclassify the crime of the crime severity scale."

**Standard of Review**

The sole question on review is whether the discharge of a gun during the commission of the crime of aggravated assault of a law enforcement officer always supports a finding of "excessive brutality" and requires an upward durational departure.

Pursuant to K.S.A. 21-4721(d), in an appeal from a departure sentence, an appellate court must determine whether the sentencing court's findings of fact and reasons justifying departure (1) are supported by substantial competent evidence and (2) constitute substantial and compelling reasons for departure as a matter of law. The applicable standard of review is keyed to the language of K.S.A. 21-4721(d)(1) which requires an evidentiary test—are the facts stated by the sentencing court in justification of departure supported by the record? K.S.A. 21-4721(d)(2) requires a law test—are the reasons stated on the record for departure adequate to justify a sentence outside the presumptive sentence? *State v. Richardson*, 20 Kan. App. 2d 932, Syl. ¶ 1, 901 P.2d 1 (1995).

K.S.A. 21-4719(c) provides:

"When a sentencing judge imposes a prison term as a dispositional departure: . . .

(2) the term of imprisonment shall not exceed the maximum duration of the presumptive imprisonment term listed within the sentencing grid. Any sentence inconsistent with the provisions of this section shall constitute an additional departure and shall require substantial and compelling reasons independent of the reasons given for the dispositional departure."

K.S.A. 21-4716 governs imposition of departure sentences. In part, that statute provides:

"(a) The sentencing judge shall impose the presumptive sentence provided by the sentencing guidelines . . . unless the judge finds substantial and compelling reasons to impose a departure. If the sentencing judge departs from the presumptive sentence, the judge shall state on the record at the time of sentencing the substantial and compelling reasons for the departure."

K.S.A. 21-4721(d) and (f) provide for appellate review of departure sentences:

"(d) In any appeal from a judgment of conviction imposing a sentence that departs from the presumptive sentence prescribed by the sentencing grid for a crime, sentence review shall be limited to whether the sentencing court's findings of fact and reasons justifying a departure:

(1) Are supported by the evidence in the record; and

(2) constitute substantial and compelling reasons for departure.

. . . .

"(f) The appellate court may reverse or affirm the sentence. If the appellate court concludes that the trial court's factual findings are not supported by evidence in the record or do not establish substantial and compelling reasons for a departure, it shall remand the case to the trial court for resentencing."

A claim that the departure factors are not supported by evidence in the record is reviewed to determine whether there is substantial evidence supporting the court's findings or whether the court's findings are clearly erroneous. A claim that the departure factors relied upon by the court are not substantial and compelling presents a question of law. *State v. Gideon*, 257 Kan. 591, Syl. ¶ 20, 894 P.2d 850 (1995). The term "substantial" means something that is real, not imagined, something with substance and not ephemeral. The term "compelling" implies that a court is forced, by the facts of a case, to leave the status quo or go beyond what is ordinary. *State v. Rhoads*, 20 Kan. App. 2d 790, 799, 892 P.2d 918 (1995). "Substantial evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion." *State v. Grady*, 258 Kan. 72, 79, 900 P.2d 227 (1995). The court's comments at the time of sentencing govern as to the reasons for departure. *State v. Gideon*, 257 Kan. 591, Syl. ¶ 21.

## Substantial and Compelling Reasons

K.S.A. 21-4716(b)(2) provides in part:

"Subject to the provision of subsection (b)(3), the following nonexclusive list of aggravating factors may be considered in determining whether substantial and compelling reasons for departure exist:

. . . .

(B) The defendant's conduct during the commission of the current offense manifested excessive brutality to the victim in a manner not normally present in that offense."

K.S.A. 21-4716(b)⟨3⟩ provides:

"If a factual aspect of a crime is a statutory element of the crime or is used to subclassify the crime on the crime severity scale, that aspect of the current crime of conviction may be used as an aggravating or mitigating factor only if the criminal conduct constituting that aspect of the current crime of conviction is significantly different from the usual criminal conduct captured by the aspect of the crime."

In K.S.A. 21-4716(b)(2)(B), the legislature specifically listed excessive brutality as an aggravating factor which may be considered in determining whether substantial and compelling reasons exist for departure. Thus, excessive brutality may constitute a substantial and compelling reason for departure. See *State v. Valentine*, 260 Kan. 431, 444, 921 P.2d 770 (1996) (citing *State v. Duke*, 256 Kan. 703, 721, 887 P.2d 110 [1994]).

The State argued on appeal that the district court found that the factual basis summarized on Eisele's probable cause affidavit and presentence investigation report indicated excessive brutality to the victim. We note that the State's probable cause affidavit and report indicated that Officer Henson had never fired his weapon in his previous 5 years as a city police officer and that Henson was affected by the incident to the extent that he suffered nightmares and other physical and emotional reactions and had to seek counseling. It is well established that an appellate court's review of the sentencing court's reasons for departing is limited to the court's findings enunciated at sentencing. *State v. Richardson*, 20 Kan. App. 2d at 942. The Court of Appeals did not address this issue because the district court did not rely upon the affidavit and report in imposing the upward departure sentence.

The district court found that the upward departure was justified solely because Eisele's conduct of threatening the officer, pointing the pistol, and firing a shot during the commission of the aggra-

vated battery of the police officer manifested excessive brutality in a manner not normally present in that offense. In affirming the district court's imposition of an upward departure sentence, the Court of Appeals also relied upon the fact that Eisele had a deadly weapon, threatened to kill the officer, and fired a shot from the pistol in his direction.

Aggravated assault of a law enforcement officer is intentionally placing the officer in reasonable apprehension of immediate bodily harm with a deadly weapon committed against a uniformed or properly identified state, county, or city law enforcement officer while such officer is engaged in the performance of such officer's duty. K.S.A. 21-3408 (Ensley 1988); K.S.A. 21-3410 (Ensley 1988); K.S.A. 21-3411 (Ensley 1988). In *State v. Cox*, 258 Kan. 557, 579, 908 P.2d 603 (1995), we interpreted 21-4716(b)(2)(B) to require conduct of a defendant " 'in a manner not normally present in that offense,' *i.e.*, conduct going beyond what is minimally needed to satisfy the elements of the offense." Eisele's verbalization of her intent to kill a law enforcement officer, pointing a deadly weapon at the officer, and her apparent ability to do so are elements of the offense of aggravated assault of a law enforcement officer and are not substantial and compelling reasons distinguishing her offense from any other aggravated assault.

Is the act of firing the gun a substantial and compelling factor? Under the facts, was Eisele's firing the gun "excessively brutal" in a manner not normally present in the offense?

We have reviewed the sufficiency of the evidence supporting the aggravating factor "excessive brutality" in several prior aggravated battery cases. In *State v. Valentine*, 260 Kan. 431, the court found that the facts justified the trial court's imposition of an upward departure sentence for defendant's conviction for aggravated battery. In *Valentine*, the defendant surprised the victim when he put a gun to the victim's head without provocation. He forced the victim over to his car as if to attempt an assassination. In addition, the record indicated that the victim feared he was going to be killed because he knew the defendant, who was not wearing a mask; thus, the victim tried to escape. In so doing, the victim was shot by the defendant and knocked to the ground. While the victim was injured

on the ground and still trying to escape, the defendant fired several more shots at the victim. The victim realized he was paralyzed and thought he was going to die. The victim was unarmed, and nothing in the record provided any explanation for shooting the victim. 260 Kan. at 442.

In *State v. Gideon*, 257 Kan. 591, the defendant argued that the court erred in imposing an upward departure on his aggravated kidnapping, rape, and aggravated criminal sodomy convictions. In part, the defendant argued that the factors of pain and humiliation or excessive brutality to the victim were not supported by the evidence because they were inherent in the offenses. This court disagreed and, in affirming the trial court, noted that the excessive brutality inflicted by the defendant went beyond that normally present in this offense. The court relied upon the fact that the victim knew she would not survive the incident. The defendant had stated to the victim that he might be capable of hurting her, he prevented her from getting out of his truck, and he took her to an area where he raped and sodomized her. Subsequently, the defendant became enraged while the victim waited for what "one can reasonably conclude she knew was certain death." 257 Kan. at 629. The court stated: "Whether we call it pain and humiliation or excessive brutality or recognize it as a separate unspecified aggravating factor, it is sufficient to be used as a substantial and compelling reason for an upward departure of the sentencing guidelines." 257 Kan. at 629.

In *State v. Hunter*, 22 Kan. App. 2d 103, 911 P.2d 1121 (1996), the Court of Appeals affirmed the trial court's imposition of an upward durational departure on defendant's sentence for aiding a felon, K.S.A. 21-3812. The basis for the departure was, in part, that Hunter's conduct had been excessively brutal in a manner not normally present in that offense. The court determined that the defendant's excessive brutality in his actions against the victim, who had suffered a gunshot wound to the head, provided a substantial and compelling reason for durational sentencing departure. The court noted that the victim was still alive at the time defendant dragged her down the stairs and through an alley, and as he left her in the alley in freezing temperatures, "he threatened to take

from her family any comfort they were to receive from donating her organs." 22 Kan. App. 2d at 107-108.

In *State v. Keniston*, 21 Kan. App. 2d 818, 908 P.2d 656 (1995), defendant appealed his departure sentence imposed following a nolo contendere plea to one count of rape. Defendant argued that the victim suffered no more emotional harm than is normally associated with a "typical" rape. In deciding that there were substantial and compelling reasons to impose a departure sentence for the rape conviction, the court noted that the victim was 80 years old and that the defendant should have known her age. The record established that during the attack, defendant knocked the victim to the floor, dragged her to her bed, and tied her up. Defendant repeatedly threatened to cut off the victim's head. Further, because of the brutality of the crime, the victim suffered either a fractured pelvis or femur and had a tooth knocked out. After the attack she was unable to care for herself, had to use a walker or wheelchair, and suffered emotional trauma resulting in flashbacks and nightmares. 21 Kan. App. 2d at 820-21.

The Court of Appeals noted several cases in which a conviction for aggravated assault has been upheld where no gun was fired: one in which loading a shotgun was a sufficient overt act to establish attempt to do bodily harm, *In re T.K.*, 11 Kan. App. 2d 632, 638, 731 P.2d 887 (1987), and one in which an attempt was established when the defendant unsnapped an officer's holster and pulled the weapon partially out of the holster, *State v. Clanton*, 219 Kan. 531, 533, 548 P.2d 768 (1976). These cases were decided prior to the enactment of the Kansas Sentencing Guidelines Act; even so, they do not stand for the proposition that firing a gun in and of itself constitutes excessive brutality.

Eisele relies upon prior cases which support her argument that a conviction for aggravated assault on a law enforcement officer often involves the firing of a weapon. See *State v. Tyler*, 251 Kan. 616, 840 P.2d 413 (1992) (shots fired at officers during a drug raid); *State v. Lawton*, 241 Kan. 140, 734 P.2d 1138 (1987) (defendant fired a shotgun on police who were responding to a domestic disturbance call); *State v. Wood*, 235 Kan. 915, 686 P.2d 128 (1984) (shots fired at police through an apartment window); *State v. Boan*,

235 Kan. 800, 686 P.2d 160 (1984) (shot fired at police officer); *State v. Martin*, 234 Kan. 115, 670 P.2d 1331 (1983) (defendant fired shots at police from upstairs window of house); *State v. Howell & Taylor*, 226 Kan. 511, 601 P.2d 1141 (1979) (defendant fired shots at a state highway patrol trooper during a chase); *State v. Hatch & Smith*, 223 Kan. 783, 576 P.2d 687 (1978) (shots fired at officer during high speed chase); *State v. McKinney*, 221 Kan. 691, 561 P.2d 432 (1977) (shots fired at detectives investigating a robbery); *State v. Bradley*, 215 Kan. 642, 527 P.2d 988 (1974) (one shot fired at officer); *State v. Wilson*, 215 Kan. 28, 523 P.2d 337 (1974) (shots fired at an off-duty police officer); *State v. Hollaway*, 214 Kan. 636, 522 P.2d 364 (1974) (shots fired at three police officers); *State v. Duncan*, 3 Kan. App. 2d 271, 593 P.2d 427 (1979) (shots fired at officer responding to a silent alarm).

In *State v. Cox*, 258 Kan. at 575, we reviewed a departure sentence and how to determine if there is substantial evidence to support a trial court's finding or if the findings are clearly erroneous. We quoted from the legislative history of the Kansas Sentencing Guidelines:

" '[T]he Committee recognized that the guidelines are designed to regulate judicial discretion, not to eliminate it. The guidelines contemplate that a typical offense and offender will be sentenced within the guidelines. For an individual somewhat more or less culpable than a typical offender, the court may choose a sentence at the top or bottom of the applicable guideline. However, when the individual is substantially more or less culpable than the typical offender, the court may consider a departure.' Minutes of the Senate Committee on Judiciary, p. 2, January 24, 1992." 258 Kan. at 575.

Eisele essentially argues the act of firing the gun did not render her more culpable than the typical offender. She states:

"The Court of Appeals appears to be creating a sliding scale where any act above the constitutional minimum quantum of evidence for a conviction will support a departure for excessive brutality. The act of firing a weapon should not be automatically transformed into an excessively brutal act or even an act not normally present in the offense simply because other defendants have been convicted of aggravated assault on less overt threats."

Here, the district court noted that Eisele threatened to kill Henson, had the means to carry out the threat, and actually fired the

gun. Eisele contends that the firing of her weapon and her statement, "I'm going to kill you," were insufficient to constitute the quantum of excessive brutality necessary to support an upward departure of her presumptive sentence. She claims that threatening to kill the officer is not substantial and compelling because pursuant to K.S.A. 21-3408 (Ensley 1988), every assault involves at least the element that a person place another person in "immediate apprehension of bodily harm." In addition, Eisele argues, the use of a firearm is one of the three statutory bases to elevate a simple assault to an aggravated assault, and the use of a deadly weapon in the commission of an assault necessarily implies a threat to kill.

Since one of the purposes of the sentencing guidelines is to ensure uniformity in sentencing, departures should only be allowed in extraordinary cases. *State v. Zuck*, 21 Kan. App. 2d 597, Syl. ¶ 3, 904 P.2d 1005, *rev. denied* 258 Kan. 863 (1995). Here, the threat to kill the officer, possessing the means to do so, and pointing the deadly weapon at the officer are the elements of the offense of aggravated assault of a law enforcement officer. The fact that a gun is fired during an aggravated assault is not per se "excessive brutality." We agree that factual situations could arise in which the discharge of a weapon toward a law enforcement officer might amount to conduct the legislature intended when it used the term "excessive brutality" in K.S.A. 21-4716(b)(2)(B). However, here, the facts do not support a substantial and compelling reason to depart; therefore, we reverse the Court of Appeals and remand the case to the district court for resentencing.

Judgment of the Court of Appeals is reversed; judgment of the district court is reversed and the case is remanded for resentencing.