IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 127,442

STATE OF KANSAS,
*Appellee*,

v.

KYLE D. YOUNG,
*Appellant*.

SYLLABUS BY THE COURT

1.

K.S.A. 21-6620(c) and K.S.A. 21-6623 provide that a judge must sentence an individual convicted of premeditated first-degree murder to life in prison with a minimum term of 50 years unless the judge concludes substantial and compelling mitigating factors justify a life sentence with a minimum term of 25 years. In this context, "substantial" means something real and of substance, not imagined or ephemeral, and a "compelling" reason is one based on the facts of the case that compels a court to depart from the statutorily presumed sentence. K.S.A. 21-6625(a) provides a nonexclusive list of potential mitigating factors.

2.

An abuse of discretion standard applies to a review of a district judge's decision to deny a motion for reducing a minimum sentence of 50 years to 25 years. Traditionally, an abuse of discretion occurs if judicial action (1) is based on an error of law; (2) is based on an error of fact because substantial competent evidence does not support the judge's factual findings; or (3) is arbitrary, fanciful, or unreasonable, that is, if no reasonable person would have taken the view adopted by the district judge.

1

Appeal from Sedgwick District Court; JEFFREY GOERING, judge. Submitted without oral argument April 2, 2025. Opinion filed May 9, 2025. Affirmed.

*Reid T. Nelson* and *Debra J. Wilson*, of Capital and Conflicts Appeals Office, were on the brief for appellant.

*Lance J. Gillett,* assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, C.J.:  Kyle D. Young entered a guilty plea to two counts of premeditated first-degree murder arising from the shooting deaths of George Kirksey and Alicia Roman. Before sentencing, Young filed a motion asking the district judge to reduce the minimum time he must serve on his mandatory life sentences from 50 years (a hard 50) to a minimum of 25 years (a hard 25). Young presented expert and other testimony in support of his motion. The district judge concluded Young failed to establish a substantial and compelling reason to reduce the minimum time he must serve on each of the two sentences before becoming parole eligible from 50 years to 25 years. Young now appeals, arguing the district judge abused his discretion by reaching an unreasonable decision.

We conclude that reasonable people could agree with the district judge's decision to deny Young's motion, and we affirm Young's sentences.

FACTUAL AND PROCEDURAL BACKGROUND

The facts relevant to our consideration of Young's appeal come from three primary sources. First, Young agreed to facts supporting his guilty plea to the two counts of premeditated murder. Second, Young presented evidence at the hearing on his motion.

2

Finally, he made statements to the court at sentencing that added information weighing on the motion.

These sources establish that Young and Alicia Roman had been in a relationship that ended—or at least changed substantially—before the murders. When one of Young's experts asked Young to describe the relationship, Young responded by saying that "he got tired of beating her so much." Yet after their breakup, he purchased a tracking device and placed it on her car. She discovered the device and removed it, but Young purchased another tracking device and used it to locate Roman the night of New Year's Day 2020, the night before he killed her.

That night, Roman was celebrating with others, including George Kirksey, in the Old Town area of Wichita. Roman separated from her friends and walked ahead to warm her car. When Kirksey and others arrived at the car, they found Young holding Roman in a headlock and pointing a gun at her head. Kirksey spoke with Young and de-escalated the situation.

The next night, Kirksey was partying in a hotel room with a female friend, T.L. Shortly after midnight, Roman joined them. Kirksey stepped outside to smoke, leaving the two women in the room. As he came back inside, a man T.L. later identified as Young entered the room and shot Kirksey. Young then shot Roman three times and left, eventually fleeing to Mexico.

After Young was apprehended, the State charged him with two counts of capital murder. As part of a plea agreement, the State agreed not to pursue the death penalty. It also agreed not to file or to dismiss various charges, to terminate probation in a separate case, and to dismiss yet another case. The State gave notice that it would seek consecutive life sentences without the possibility of parole for 50 years for the two

premeditated-murder convictions. But the plea agreement allowed Young to seek any legal sentence, although the State reserved the right to object to any departure request.

As allowed by the plea agreement, Young filed a motion for departure. Young asked the district judge to sentence him to concurrent life sentences with the possibility of parole after he had served 25 years in prison. In support he cited several grounds for reduced mandatory minimum sentences. Then, at the evidentiary hearing on the motion, Young presented testimony from two expert witnesses and some family members.

One of the experts, psychologist Dr. James Garbarino, testified about the impact of Young's upbringing on his behavior and thinking. Dr. Garbarino administered two assessments: the Adverse Childhood Experience Scale and the Narcissistic Personality Inventory.

The Adverse Childhood Experience Scale asks 10 questions about the subject's childhood and aims to predict difficulties later in life. Young's high score strongly suggested that he was susceptible to things like "substance abuse, depression, suicidal thoughts and behavior, violent behavior, [and] cardiovascular health." But Dr. Garbarino also explained that the assessment was not diagnostic or predictive of an individual's future behavior but more like an actuarial table.

Dr. Garbarino also administered the Narcissistic Personality Inventory, which indicated Young had "a problem with narcissism." Dr. Garbarino testified that Young's narcissism was related to the murders because the victims "dared to cross him, dared to disappoint him, dared to be disloyal to him, dared to not follow his orders." But Dr. Garbarino believed that Young had a "realistic possibility" of "rehabilitation and positive transformation" and that being eligible for parole after 25 years would be a positive motivator moving forward. He also testified that Young was engaging in activities to mitigate his narcissism, such as reading profound books.

4

Young also called forensic psychologist and professor of psychiatry Dr. Daniel Murrie as an expert witness at the hearing on his motion. Dr. Murrie testified about Young's likelihood of violence behind bars. After interviewing Young, reviewing records, and completing a violence risk assessment, Dr. Murrie opined that Young was "no more likely than any other person in custody to commit violence." Compared to other capital inmates or homicide offenders, his risk of future violence might even be lower, according to Dr. Murrie. Dr. Murrie highlighted the absence of any violent incidents during Young's incarceration and opined that, if Young was released in his 60s or 70s, his age would make it unlikely for him to reoffend in the community.

In addition to these expert witnesses, members of Young's family testified about his childhood. One witness, Tracy C. Mason, is a first cousin of Young's mother. Mason explained that Young's parents had good jobs, were going to school, and were doing well during the early years of their marriage. But crack cocaine began spreading through the neighborhood and the resulting drug culture turned Young's parents "into thieves" who were neglectful and would do anything for drugs. Physical abuse also began occurring around this time, and Young's father began leaving the family for extended periods. Then, when Young was a young adult, his mother was diagnosed with cancer and passed away. Young started getting into crime, drugs, and alcohol. At some point before the murders, Young approached Mason for advice about his relationship with Roman. While Mason provided no details about what Young said, he offered that he had discouraged Young from committing acts of violence, including murder.

Young's sister also testified, describing their family life growing up. In addition to Young, she had two other brothers who were younger than both her and Young. She portrayed their father as an involved parent until he started using drugs. She reported that her father was violent towards his sons and her mother, and she described an incident of their father attempting to choke their mother. He began disappearing, sometimes for two

to three years at a time. When he returned, he would steal jewelry or money from the family home and then disappear again. According to her, Young generally felt abandoned by his father and would often argue with him when he was around. On the other hand, Young had a very close relationship with their mother. Young "relied and trusted her on everything." But their mother contracted cancer when Young was around 18 or 19. Her health declined, and she died when Young was around 20.

In addition to this evidence, the judge heard or read victim impact statements from Kirksey and Roman family members, including siblings of each, Kirksey's father, and one of Kirksey's three children. Counsel for both parties then argued about each mitigating factor and the overall evidence. The State emphasized that Kirksey had been able to calm Young the night before and prevent violence only to have Young premeditate the murder of both Kirksey and Roman the next night.

After hearing arguments of counsel, the judge granted Young the right of allocution under K.S.A. 22-3424. In making his statement to the court, Young started by addressing the victims' families. He explained he had acted out of anger when murdering Kirksey and Roman and now understood he was a narcissist. He told the families that neither Kirksey nor Roman "deserved" what he did, "I shouldn't have never killed nobody . . . ." Young then took issue with being called a coward by several of Kirksey's family members. He also said he went to Mexico because someone shot at his sister's house, and he thought "it was going to get way more violent. . . . Because I could have kept up more violence." Young spoke for some time, interspersing expressions of regret for his actions with his disagreement with the words and the tone of the victim impact statements.

The district judge generally addressed the law about departing from hard 50 sentences and addressed Young's evidence and arguments. The judge concluded that "there really isn't anything that [Young] presented that I think gives rise to a substantial and compelling reason for departure." The court sentenced him to two consecutive

6

lifetime hard 50 sentences, for an effective sentence of 100 years before the possibility of parole.

Young brought this direct appeal over which we have jurisdiction. K.S.A. 60-2101(b) (Supreme Court jurisdiction over direct appeals governed by K.S.A. 22-3601); K.S.A. 22-3601(b)(3)-(4) (direct appeals to Supreme Court allowed for life sentence and off-grid crimes); K.S.A. 21-5402(b) (first-degree murder is an off-grid person felony).

ANALYSIS

K.S.A. 21-6620(c) and K.S.A. 21-6623 provide that a judge must sentence an individual convicted of premeditated first-degree murder to a life sentence that they must serve in prison for at least 50 years, unless the judge concludes "substantial and compelling reasons" justify applying a mitigating factor to lower the minimum time in prison to 25 years. *State v. Zongker*, 319 Kan. 411, 433, 555 P.3d 698 (2024). In the context of a judge's consideration of mitigating factors under K.S.A. 21-6623 and K.S.A. 21-6625, "substantial" means something real and of substance, not imagined or ephemeral, and a "compelling" reason is one based on the facts of the case that compels a court to depart from the statutorily presumed sentence. 319 Kan. at 433.

K.S.A. 21-6625(a) provides a nonexclusive list of potential mitigating factors, including the absence of a "significant history of prior criminal activity" by the defendant. K.S.A. 21-6625(a)(1); see *Zongker*, 319 Kan. at 434 (describing the list as nonexclusive). Here, Young asks us to consider several factors that he also presented to the district judge, including the absence of a significant criminal history, which before us he argues is a statutory factor. In response, the State contends that criminal *history* differs from the statutory factor of criminal *activity* and Young's focus on criminal history should not be considered a statutory factor. Young presents three other factors he labels

7

as nonstatutory factors: risk factor for future violence, chaotic or adverse childhood experiences, and remorse and acceptance of responsibility.

Because Young raises several nonstatutory factors, we apply a multistep standard of review. This standard adapts the traditional abuse of discretion standard, which we apply when dealing with statutory mitigation factors, to the unique considerations involved in considering nonstatutory factors. See *State v. Morley*, 312 Kan. 702, 711, 479 P.3d 928 (2021). Traditionally, an abuse of discretion occurs if judicial action (1) is based on an error of law; (2) is based on an error of fact because substantial competent evidence does not support the judge's factual findings; or (3) is arbitrary, fanciful, or unreasonable, that is, if no reasonable person would have taken the view adopted by the district judge. *Morley*, 312 Kan. at 710 (citing *State v. Jolly*, 301 Kan. 313, 325, 342 P.3d 935 [2015]) (holding abuse of discretion standard applies to rulings about departure factors); *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012) (iterating three-part abuse of discretion standard). Even if a factor can be a mitigating factor, departure may not be justified. See *State v. Grady*, 258 Kan. 72, 83, 900 P.2d 227 (1995).

By focusing his arguments on the reasonableness of the district judge's decision to deny his motion, Young does not argue the judge committed an error of fact or an error of law. Nor does he challenge his consecutive sentences. He thus has waived or abandoned any such arguments. See *State v. Davidson*, 315 Kan. 725, 728, 510 P.3d 701 (2022) ("[A] party waives or abandons any argument not made on appeal[.]").

We next examine each factor argued by Young and explain why we conclude that a reasonable person could agree with the district judge's conclusion that Young did not establish a substantial and compelling reason for reducing the mandatory minimum sentences he must serve from hard 50 sentences to hard 25 sentences.

1. *Past criminal activities*

Young first asserts that, under K.S.A. 21-6625(a)(1), his limited criminal history was a substantial and compelling reason to grant the departure motion. In phrasing this issue as criminal history, Young misreads the statute. Compare K.S.A. 21-6625(a)(1) ("[t]he defendant has no significant history of prior criminal *activity*" [emphasis added]) with K.S.A. 21-6803(c) (defining criminal *history* [emphasis added]). For Young, the difference affects the analysis of whether the factor is statutory. It also makes a difference as to the scope of facts relevant to the district judge's decision about whether the factor was substantial and compelling. Ultimately, these differences do not change the outcome because, whether considered as the statutory factor of criminal activity or a nonstatutory factor of criminal history, reasonable jurists could agree with the district judge's conclusion that neither Young's past criminal activity nor his criminal history support granting Young's request for a minimum sentence of 25 years.

Focusing on the statutory factor of the history of criminal activity, the stipulated factual basis and Young's statements at sentencing revealed a history of various offenses, mostly uncharged, based on Young beating Roman, tracking her, and assaulting her. In addition, Young's statements to the court and to experts revealed that he had possessed, used, and sold illegal drugs. When looking at the statutory factor of the evidence of Young's criminal activities, a reasonable person could conclude that the phrase "no significant history of prior criminal activity" did not apply to Young's circumstances and did not provide a substantial and compelling reason to reduce the minimum time in prison.

At sentencing and on appeal, Young narrowed the focus to his criminal history. Young had 13 prior misdemeanors and 2 prior drug-related felonies: a cocaine possession conviction in 2006 and a cocaine distribution conviction in 2018. We have recognized that under some circumstances a defendant's criminal history can create a

9

substantial and compelling reason for departure when something distinguishes that history from the present charges. See *State v. Favela*, 259 Kan. 215, 236, 911 P.2d 792 (1996).

Young emphasizes the unrelated nature of drug charges to the murder charges. While we recognize that Young had no history of committing a person felony, we also note that part of the sentencing proceeding dealt with the reality that Young was on probation for a cocaine distribution conviction at the time of the murders and his failure to remain law abiding meant he had violated the terms of that probation. Under those circumstances, we conclude the district judge could reasonably conclude that Young's criminal history was not a substantial and compelling reason to depart. See *State v. Galloway*, 316 Kan. 471, 478, 518 P.3d 399 (2022) ("We agree that while the statute recognizes lack of criminal history *may* support a departure, the statute does not require a district court depart when a defendant lacks a criminal history.").

2. *Risk factor of future violence*

Second, Young directs us to Dr. Murrie's testimony that Young is unlikely to be violent in prison, and that Young's age if paroled after spending 25 years in prison would make it unlikely that he would commit future violence in the community. We have considered future dangerousness as a nonstatutory factor when considering motions to depart. *State v. Newman-Caddell*, 317 Kan. 251, 258, 527 P.3d 911 (2023); *State v. Yardley*, 267 Kan. 37, 43-44, 978 P.2d 886 (1999).

But "the existence of a factor that is arguably mitigating does not necessarily mean that such a factor is 'substantial and compelling.'" *State v. Blevins*, 313 Kan. 413, 440, 485 P.3d 1175 (2021). Here, Dr. Murrie admitted that his analysis focused on Young's propensity for violence *in prison*, not the community, which undercuts its impact. A reasonable person could agree that Young's self-admitted actions when angered or

crossed, including actions that made him "tired of beating [Roman] so much," suggested Dr. Murrie's qualified assessment was not a substantial and compelling reason for departure.

3. *Adverse childhood experiences*

Young next points to his difficult childhood to support departure. He draws an analogy to K.S.A. 21-6625(a)(8). That provision recognizes a departure factor exists if, "[a]t the time of the crime, the defendant was suffering from posttraumatic stress syndrome caused by violence or abuse by the victim." Here, however, there is no evidence in the record demonstrating Young suffers from PTSD. Even if PTSD could be inferred, nothing suggests Young's actions were motivated by violence or abuse at the hands of either Kirksey or Roman. Young's situation is not comparable to the situation addressed in K.S.A. 21-6625(a)(8).

Even so, we have considered a defendant's upbringing as a potential factor for departure. See *State v. Hopkins*, 317 Kan. 652, 660-61, 537 P.3d 845 (2023); *State v. Lloyd*, 299 Kan. 620, 643, 325 P.3d 1122 (2014). Here, Young presented evidence of a difficult childhood characterized by parental drug use, parental absenteeism, an itinerant lifestyle, and instances of violence. His experts also testified that their evaluations of Young, while reflecting adverse childhood events, yielded results consistent with other offenders. The district judge reviewed precedent emphasizing that the sentencing guidelines assure uniformity and thus departures should be limited to situations in which substantial and compelling reasons force the court to go beyond the status quo of the statutorily presumed sentence. With that consideration in mind, the district judge turned back to Young's evidence, concluding that nothing Young presented "rise[s] to a substantial and compelling reason for departure."

11

We conclude that reasonable people could agree with the district judge that Young's childhood difficulties that experts describe as being in line with similar offenders did not constitute a substantial and compelling reason for departure.

4. *Remorse and acceptance of responsibility*

Finally, Young argues that his remorse and acceptance of responsibility supported a reduction of the minimum sentence. We have found both to be mitigating factors. *Morley*, 312 Kan. at 713-14 (acceptance of responsibility); *State v. McNabb*, 312 Kan. 609, 614, 478 P.3d 769 (2021) (remorse). Young points to his sister's testimony that while in prison Young had started to focus less on himself and more on others. She explained that Young can now receive criticism without reacting aggressively, and Dr. Garbarino testified that Young was taking steps to reduce his narcissism.

The district judge acknowledged these steps and recognized that Young took responsibility, stating: "I do appreciate the fact that Mr. Young has taken some responsibility for the case by pleading guilty to the offenses for which he's being sentenced today. But I think, as the State points out, this is all part of the bargain." After discussing the terms of the plea bargain, the judge concluded that "this is all part of a give and take between the State and the defense which got us here today. . . . I place some weight on that, but not a whole lot of weight."

Again, we conclude that a reasonable person could agree that Young's acceptance of responsibility did not rise to a substantial and compelling reason to depart based on the district court's weighing of that acceptance against what Young gained by accepting responsibility. Young's acceptance took the death penalty off the table, resulted in charges and an agreement not to charge other crimes, opened the possibility of parole at some point, and allowed him to file a departure motion. These benefits support the reasonableness of the district judge's conclusion that Young did not present a substantial

and compelling reason that forced the judge to depart from the status quo and impose a sentence below the statutorily mandated term.

CONCLUSION

The evidence and arguments presented by Young do not present an "'extraordinary case[].'" *State v. Brown*, 305 Kan. 674, 697, 387 P.3d 835 (2017) (quoting *State v. Eisele*, 262 Kan. 80, 90, 936 P.2d 742 [1997]). A reasonable person thus could agree with the district judge that nothing Young presented meets the definition of a substantial and compelling reason to depart from hard 50 sentences. Even when we consider the factors together, we conclude that reasonable people could agree that the circumstances do not ""force[] a court—by the case's facts—to abandon the status quo and venture beyond the presumptive sentence."' [Citations omitted.]" *Galloway*, 316 Kan. at 476. We affirm the district judge's decision to deny Young's motion for departure. We thus affirm his sentences.

Affirmed.

WILSON, J., not participating.

13