No. 79,283

STATE OF KANSAS, *Appellee/Cross-appellant,* v. KELLY LEE MINOR, *Appellant/Cross-appellee.*

(997 P.2d 648)

Opinion filed January 28, 2000.

*Rebecca E. Woodman*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with her on the briefs for appellant.

*Joe E. Lee*, county attorney, and *Carla J. Stovall*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

LARSON, J.: Kelly Minor was convicted by a jury of one count of aggravated criminal sodomy, K.S.A. 21-3506(a)(1), a severity level 2 person felony.

Minor appeals his conviction, contending the trial court erred in denying his motion to suppress his statements, claiming they were involuntarily made.

The State cross-appeals the trial court's granting of a downward durational departure from a presumptive sentence of 256 months to a sentence of 72 months' imprisonment. The State contends the sentencing court did not state substantial and compelling reasons that were supported by the record and, alternatively, that the departure was the result of partiality, prejudice, oppression, or corrupt motive.

## Facts

In November 1996, 14-year-old S.R. was being interviewed by Detective Mark Schondelmaier of the Emporia Police Department on a different matter when she told him of another criminal event.

S.R. stated that a week previously she had spent the night with her 13-year-old friend, A.C. She stated that A.C. and her younger sister C.C., and C.C.'s friend, J., were in the house without adults being present. Randall Ricketts and Kelly Minor came to the house for a period of time, both left, and then Minor returned alone about 20 minutes later.

S.R. related that she and A.C. were in A.C.'s downstairs bedroom with the younger children upstairs. Before Minor entered the room, S.R. told Detective Schondelmaier, "A.C. told me that she wanted to have sexual intercourse with him and so I went upstairs and let them two be." A short time later, S.R. and the other two children went downstairs and walked into A.C.'s darkened bedroom, and when flipping on the light, S.R. stated: "Kelly was standing up and he was zipping up his pants and A.C. was sitting on the bed wiping her mouth."

Based on this information, Detective Schondelmaier asked Minor to come to the police station. Minor was advised of his *Miranda* rights, and when Schondelmaier told him he wanted to talk about the incident with A.C., Minor said he would not give a statement until arrested. This ended the first interview.

Detective Schondelmaier then interviewed A.C., who told him Minor had asked her for oral sex and that she had complied for about one minute but the act was not complete when they were interrupted by the other girls. The testimony of Detective Schondelmaier at trial concerning consent was that A.C. had consented to the oral sex, although she had told him that she did not want to do so. Schondelmaier testified he did not believe Minor forced A.C. into the act.

After the interview with A.C., Minor was arrested by Officer Owens, who said Minor was upset but did not appear to be under the influence of alcohol.

Detective Schondelmaier and Detective Cronk interviewed Minor at the Lyon County Jail following his arrest. Minor was advised of his *Miranda* rights and said he understood his rights and agreed to speak with them.

Minor initially denied the crime, but when informed this was his opportunity to give his version of what happened, admitted to participating in the act. He contended A.C. consented and it was her idea. He testified to engaging in oral sex for a short period, admitted he knew A.C. was 13 or 14 years old, and eventually signed a written statement. In the statement, Minor contended the oral sex was voluntary and consensual, that A.C. turned off the lights and turned the stereo on, and that she was sitting down and he was in front of her and she sucked his penis for a few minutes; then, an ex-boyfriend of A.C.'s showed up, so she ran out to see him. He wrote he knew it was wrong and said "it got carried away."

Neither detective observed any indication that Minor was under the influence of alcohol while they observed him for a period of about an hour.

After Minor was charged, he moved to suppress his statement, contending it was involuntary because he was under the influence of alcohol and he was coerced by the detectives' alleged promises.

After a hearing where Detectives Schondelmaier and Cronk and Officer Owens, as well as Minor, testified, the trial court found there was no coercion in the officers' request for Minor to be honest and the statement and confession were voluntary. Looking at the duration and manner of the interrogation, and the age and background of the accused, the trial court found that there was nothing unfair about the interrogation. Minor was properly warned as to his *Miranda* rights, he was not impaired, and the statement was held to be admissible.

At trial, the evidence was substantially as previously set forth. The only parties testifying were S.R., A.C., and Detective Schondelmaier. Minor was convicted by the jury of one count of aggravated criminal sodomy.

Minor moved for a downward durational departure, contending the victim was a participant in the conduct associated with the crime, that he had played only a minor or passive role in the crime, and that the degree of harm or loss attributed to the current crime was significantly less than typical for such an offense. A downward durational departure to a sentence in the range of 36 months was requested. The trial court did grant a downward departure to a sentence of 72 months' imprisonment from a presumptive sentence of 256 months.

Minor appeals, questioning the voluntariness of his statement. He contends it should have been suppressed. The State cross-appeals, contending the downward durational departure was improperly entered.

## Minor's issues

*The trial court did not err in denying Minor's motion to suppress his statement.*

Minor argues that his written statement to the police in which, in effect, he confessed to the crime charged, should have been suppressed. He contends it was not a product of his free and independent will because he was under the influence of alcohol, and he was coerced by the police into writing the confession.

The State first argues Minor failed to preserve this issue by not objecting to the admission of the statement made to the officers

during trial. However, the record reflects an objection to the admission of the written statement. We find this issue was properly preserved.

The State further argues there is substantial competent evidence to support the trial court's determination that the statement was voluntarily made, that Minor was not sufficiently under the influence so that his actions were involuntary, and that the statement was admissible. We agree.

The standard of review of a trial court's determination where an inquiry on the admissibility of a defendant's statement was conducted and the statement was admitted is narrow. The trial court's ruling will be accepted on appeal if it is supported by substantial competent evidence. *State v. Goseland*, 256 Kan. 729, 731, 887 P.2d 1109 (1994).

In this case, a suppression hearing was held, and the trial court heard the evidence by Detectives Schondelmaier and Cronk and Officer Owens, as well as the testimony of Minor. It therefore becomes our limited duty to determine whether the ruling was supported by substantial competent evidence.

At trial, Minor testified he had drunk ¾ of a bottle of malt liquor and five or six beers prior to the first interview and nearly a pitcher of beer by himself before the second interview. He testified that the detective told him he needed to be honest and that if he came clean there was a chance that charges would not be filed. He further contended it took 30 minutes for him to write a one-page statement and that he did not become aware of A.C.'s age until after his arrest.

Officer Owens, who arrested Minor, testified he did not observe any signs of intoxication. Detectives Schondelmaier and Cronk, who were both present during the entire interview, both testified there was no evidence of intoxication. They said Minor was promised nothing, although he was encouraged to tell the truth. The trial court heard the witnesses, considered the evidence, and properly determined the statement was voluntarily given.

The law concerning the voluntariness of a confession is set forth in *State v. Matson*, 260 Kan. 366, 921 P.2d 790 (1996), which states that we must look to the totality of the circumstances, including

the duration and manner of the interrogation; the ability of the accused to communicate; the accused's age, intellect, and background; and the fairness of the officers in conducting the interrogation. The essential inquiry in determining the voluntariness of a statement is whether the statement was the product of the free and independent will of the accused. *State v. Price*, 247 Kan. 100, Syl. ¶ 1, 795 P.2d 57 (1990).

The findings of the trial court on the motion to suppress are based upon substantial evidence. We do not on review substitute our view of the evidence for that of the trial court. It is clear the statement was voluntarily given. The trial court was justified, based upon the testimony of the officers, in finding that Minor's drinking had no effect upon his understanding of the circumstances. Minor was *Mirandized* twice; there was no showing of any threats or coercement. The statement was clearly and properly admitted into evidence and considered by the jury in determining Minor's guilt. This contention is without merit.

### State's Cross-appeal

*Did the trial court have substantial and compelling reasons for departure or, in the alternative, was the departure the result of partiality, prejudice, oppression, or corrupt motive?*

K.S.A. 21-4721 provides that a departure sentence is subject to appeal by either the defendant or the State. Subsection (d) provides:

"[s]entence review shall be limited to whether the sentencing court's findings of fact and reasons justifying a departure:
(1) [a]re supported by the evidence in the record; and
(2) constitute substantial and compelling reasons for departure."

It is also proper in any appeal for the appellate court to review a claim that "[a] sentence that departs from the presumptive sentence resulted from partiality, prejudice, oppression or corrupt motive." K.S.A. 21-4721(e)(1). The Court of Appeals in *State v. Starks*, 20 Kan. App. 2d 179, 183, 885 P.2d 387 (1994), relying on *State v. Heywood*, 245 Kan. 615, 620-21, 783 P.2d 890 (1989), held the burden is on the party making these claims and the scope of review is whether the trial court's discretion is abused. Discretion is

abused only when no reasonable person would take the view adopted by the court. We have also said that " 'if reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.' " *State v. Stallings*, 262 Kan. 721, 726, 942 P.2d 11 (1997).

The landmark Kansas case dealing with downward departures, *State v. Favela*, 259 Kan. 215, Syl. ¶ 6, 911 P.2d 792 (1996), states: "A claim that the departure factors relied upon by the sentencing court do not constitute substantial and compelling reasons for departure is a question of law." *Favela* interpreted K.S.A. 1994 Supp. 21-4719(b)(1) to give appellate courts authority to review the extent of downward durational departures and reasoned that "since the power to review the extent of departures is based on a mere inference, an appellate court should not give itself more power than the legislature intended, and the review should be limited to the weakest type of review—abuse of discretion." *Favela*, 259 Kan. 215, Syl. ¶ 9.

Minor's motion for a durational departure was from a Kansas Sentencing Guidelines Act (KSGA) mid-range sentence of 256 months under a criminal history score of category C, crime severity level 2, and substantially alleged:

1. The victim was a participant in the criminal conduct associated with the crime of conviction.

2. The offender played a minor or passive role in the crime.

3. The degree of harm or loss attributed to the current crime of conviction was significantly less than typical for such an offense.

4. The defendant believed that a downward durational departure would be appropriate in this matter and that a sentence in the range of 36 months would be appropriate for the crime of conviction herein.

These allegations substantially follow portions of the nonexclusive list of mitigating factors that may be considered to determine if substantial and compelling reasons for a departure exist, which are statutorily set forth in K.S.A. 1998 Supp. 21-4716(b)(1):

"(A) The victim was an aggressor or participant in the criminal conduct associated with the crime of conviction.

"(B) The offender played a minor or passive role in the crime or participated under circumstances of duress or compulsion. This factor is not sufficient as a complete defense.

. . . .

"(E) The degree of harm or loss attributed to the current crime of conviction was significantly less than typical for such an offense."

### K.S.A. 1998 Supp. 21-4716 further provides:

"(c) In determining aggravating or mitigating circumstances, the court shall consider:
(1) Any evidence received during the proceeding,
(2) the presentence report;
(3) written briefs and oral arguments of either the state or counsel for the defendants; and
(4) any other evidence relevant to such aggravating or mitigating circumstances that the court finds trustworthy and reliable."

The sentencing judge heard the testimony of S.R., A.C., and Detective Schondelmaier at Minor's jury trial. Minor testified at the sentencing hearing. He attempted to excuse his criminal actions because of a drinking problem and being intoxicated. He feigned recollection of the sexual event with A.C., suggested it may have been interrupted before it happened, claimed it was not forced, and stated it was only of a minute or so in duration. He claimed every crime he had been involved with was alcohol related, said he had never committed any violent offenses, and asked to have a chance to live a normal life and raise his son. He realized the presumptive sentence was over 20 years' imprisonment and asked for a reduction to a 36-month sentence.

He was confronted on cross-examination with his written statement in which he indicated he had put his penis into A.C.'s mouth for "a few minutes." He equivocated from the admission in his statement that oral sex with A.C. had occurred. He admitted to a juvenile adjudication for indecent liberties with a 13-year-old girl. He testified at the sentencing that he did not consider A.C. a child. He admitted he knew his acts were against the law. He admitted to being larger and stronger than A.C. He denied entering A.C.'s room with the idea of sexual relations occurring. He contended A.C. turned out the lights, and thereafter his recall became shaky. He went to A.C.'s house because he was "bored" and "couldn't

think of anything better to do." He was 23 years old at the time and A.C. was 13 years old.

Immediately after Minor's testimony and before arguments were presented on the departure motion, the court said: "Well, we're taking that kind of—those kind of statements right now, because I can tell you, I'm going to depart."

Minor's counsel, in arguing the victim was a participant in the criminal conduct, pointed to the testimony of S.R. that A.C. had approached Minor about sex and that S.R. and Minor had both indicated it was not a forced act.

Minor's counsel stated he did not believe that when the Kansas Legislature doubled all the sentences for all severity level 1 and 2 crimes effective July 1, 1996, it had meant for a defendant to serve over 20 years' imprisonment in cases like this. He said they were not asking for probation. He argued that consent existed. Defense counsel then stated, "[C]hildren in our society are having sex at younger ages. Look at the number of young men that have been paraded in front of you in this courtroom with these two girls. It's incredible." He admitted that it was a serious crime, regardless of whether the victim consented or not, but said, "256 months, 279 months. It's insane." He said the evidence and the hearing at trial was substantial and compelling to justify the granting of a downward durational departure.

The county attorney stated the legislature knew precisely what it was doing when it increased the crime severity levels. He said the system is set up so we do not have rich or poor, black or white being treated differently. In countering the argument as to participation, he pointed to "[t]he crime of conviction is this man putting his penis in the mouth of a 13-year-old child." At this point, the court said: "[A]nd you think that's worth twenty-some years?"

The county attorney said, "[Y]es, I do," and proceeded to point out it was a severity level 2 crime and the only reason it was 20 years was that this man had done it before. He said Minor knew full well what he was doing as he had been adjudicated for a sex crime previously. He argued the State does not have to show the defendant forced participation by the victim to avoid departure as a matter of law.

As to the claim Minor played a passive role in the crime, the county attorney argued Minor actively participated. He next said the degree of harm was yet to be determined. Minor was not taking care of his wife and child, drinking was not a valid excuse, there were more aggravating factors than mitigating, and there is not one factor that calls for a departure.

At this point, the judge said: "Well, the thing that's unfortunate in this case are the two girls that are putting about four young men in the pen are still running around out on the damned streets, still doing the same thing to more men. That's what's unfortunate."

The State challenged the court's recitation of these facts, pointing out that there was one defendant being sentenced and one victim. At this point, the sentencing judge interjected another criminal case into the sentencing:

"And yesterday we finished a case with [S.], whatever her name was, was the victim, and she sat there like, you know, nothing ever happened to her. And she had been dicked by three or four different guys. And, you know, it's just—and then you're trying to tell me that 270 months are—appropriate in a case like this?

"Mr. Lee [county attorney], unfortunately, I can't agree with you, so—"

The State again pointed out that while S.R. and A.C. were "associated" with each other, the court's statements that these two were continuing to "do it" and they were sending "four or five guys . . . to prison" were inappropriate and inaccurate. The county attorney asked the court to deny the departure motion.

The judge then stated:

"Well, the Court has listened to all of this and I'm ready to sentence the defendant. I'm departing from the standard of 256 months to 72 months for the reasons that, one, the victim was a participant in the criminal conduct associated with the crime; two, that the offender played a minor and passive role in the crime; three, that the degree of harm attributed to the current crime was significantly less than typical. And that, in the Court's mind, are enough findings to lower this down to something more reasonable and livable.

"And were this a black man, yellow man, or whatever, it wouldn't make any difference, because if the legislature set up 256 months for a crime like this then the legislature better look at their Sentencing Guidelines and redo them when they have active participant[s], underage girls that are as much responsible or more so than the men that they are putting in prison.

"Now, I've said my say and I can leave the bench, and it's been nice working with you all.

"Mr. Atherton would you inform your client of the appellate time, et cetera, et cetera, and all the other matters that he needs to be informed of, and his Constitutional rights?"

The State pointed out that it was "not sure that we technically ever separated from the departure motion to the sentencing" and inquired if the court was accepting the presentence investigation report as accurate. Hearing no objection, the court accepted the report.

At this point Mrs. Sampsel stood and, over the State's objections, was allowed to address the court. She was not a relative of either the victim or Minor. The court said, "You've already talked once today. What do you want to talk about now?"

Mrs. Sampsel sought further leniency for Minor, to which the sentencing judge responded:

"Well, ma'am, you heard me rant and rave about the Sentencing Guidelines. And if you feel so strongly, instead of talking to me, go down to Topeka right down the road fifty miles and you walk in and you tell those legislature (sic) what you're telling me. . . . And then I certainly agree with you that, you know, ten days in jail is too much for a blow job from a 13-year-old. Now, if it was coming from a 40-year-old, that might be worth ten days, but from a 13-year-old it wouldn't be worth, you know, a day in jail. But . . . the legislature has made those rules, not the County Attorney, not Mr. Atherton, and I didn't. And I'm sure that Mr. Lee is very disappointed because I reduced what I did because of this young man's prior record. And I don't know that I did the right thing by reducing it as far as I did, but that's—I feel very strongly also about the legislature saying these are worth 20 years or—even without the criminal history he had. The normal is, what, ten years, Mr. Lee, if my sentencing—or arithmetic is right. It was 146 months even if he had come in here with totally clean hands. And that's ten-plus years.

"So you go down and tell the legislature and get your friends and neighbors to go down there and tell them what a bunch of little ladies they got running around and how many men they've got in the penitentiary while they just get to do blow jobs and get no responsibility at all, or take no responsibility at all. But, you know, sure, he needs a father, but he should have thought about that before he did not only this crime but a bunch of other crimes when he was still a teenager. And I gave him the biggest break I could give him."

The journal entry of judgment entered the day of sentencing ordered the downward durational departure and gave the following

reasons for the departure: "Victim participation, offender['s] minor or passive role, and degree of harm is less than usual."

The State first argues that since lack of consent is not an element of the offense, the presence of consent is not grounds for departure as a matter of law. Although admitting the sentencing judge "echoed the statutory grounds claimed," the State contends the judge failed to state the facts relied upon. The sentencing judge stated it was excessive to sentence Minor to the guidelines period of time for a "blow job" by a 13-year-old, but the State argues the judge failed to articulate specific facts to show substantial and compelling grounds for the departure.

The State argues the sentencing judge's comments as to A.C. and S.R. show prejudice and the sentiments behind the judge's comments reflect bias, partiality, and prejudice.

Minor relies on the broad holding of *Favela*. He contends K.S.A. 21-4728 states the KSGA should "permit a sentence appropriate for each individual case," and points out that one of the purposes of the sentencing guidelines was to reduce prison overcrowding by reserving space in prison for serious and violent offenders who present a threat to public safety.

Minor argues the three findings made by the trial court were supported by substantial competent evidence. S.R., A.C.'s friend, testified that A.C. "told me that she wanted to have sexual intercourse with him and so I went upstairs and let them two be." Minor further states Detective Schondelmaier, after interviewing all the parties, testified he did not believe Minor forced A.C. into the act.

Minor contends the State conceded consent but argued voluntary participation by A.C. is not grounds for departure as a matter of law. Minor notes the State failed to cite *State v. Rush*, 24 Kan. App. 2d 113, 115-16, 942 P.2d 55 (1997), which holds that the willing participation of a female victim, while no defense to a charge of statutory rape, may properly be considered in imposing punishment and constitutes a substantial and compelling reason for departure as a matter of law, citing 21-4716(b)(1)(A).

Minor points out the State's argument at the sentencing hearing that Minor provided alcohol to A.C. at the time of this act is factually wrong and there is no testimony to support this contention.

In addition, there was no evidence regarding the presence of the HIV virus, which was the only argument advanced by the State that the harm or loss attributed to the crime was not significantly less than typical.

Minor persuasively points out that A.C.'s willing participation is, by itself, sufficient to support the departure. This argument relies on *State v. Zuck*, 21 Kan. App. 2d 597, Syl. ¶ 4, 904 P.2d 1005, *rev. denied* 258 Kan. 863 (1995), which held: "In Kansas, there is no legal requirement that all the reasons given by a sentencing court to support a departure sentence be substantial and compelling if one or more of such factors relied upon is substantial and compelling."

Finally, in response to the State's arguments that the sentiments behind the sentencing court's comments reflect bias, partiality, and prejudice, Minor argues that while some of the judge's comments might be considered uncouth, the only "sentiment" which was being expressed by the court was that the presumptive sentence in this case was excessive, given A.C.'s willing participation in the sexual act. Minor argues that "[c]omments by a judge do not necessarily prove that the sentence was improper," citing *State v. Tran*, 252 Kan. 494, 509, 847 P.2d 680 (1993).

Finally, Minor maintains his conduct is not excused. He must serve 6 years in prison. He states the court imposed a sentence appropriate on the facts of this case. The court, in evaluating the record and facts, acted within the discretion granted by the KSGA.

The result we reach on the State's cross-appeal is in a large part based on our standard of review that was broadly established in *State v. Favela*, 259 Kan. 215. In *Favela*, we reversed a split Court of Appeals decision reported at 21 Kan. App. 2d 202, 898 P.2d 1165 (1995), that had sought to limit a trial court's discretion in entering downward dispositional and durational departures. The Kansas Legislature has met for three sessions following our *Favela* decision and has not seen fit to reign in or restrict the trial court's discretion relating to dispositional and durational departures. *Favela* is therefore the basis by which we consider the trial court's actions.

*Favela* involved both a downward durational and a dispositional departure following a plea to attempted second-degree murder; Favela's presumptive prison sentence of 51 to 59 months was reduced to 14 months, and he was placed in community corrections for 36 months. The Court of Appeals held the reasons for departure were not substantial and compelling. Our court reversed and reinstated the sentence the trial court ordered. In doing so, we spoke broadly concerning the discretion of trial judges to impose "a sentence which is proportionate to the severity of the crime of conviction and the offender's criminal history." K.S.A. 21-4719.

We held in *Favela*, that " 'the sentencing court was not required to provide separate reasons for the dispositional and durational departures in this instance.' " 259 Kan. at 221. We also noted the trial court did not usurp the powers of the prosecutor by suggesting that all the facts showed was in reality an aggravated assault case, which is a level 7 felony. With defendant's criminal history, that computed to the 14-month sentence entered by the trial court.

In reviewing the departure sentence, our *Favela* opinion looked to the six reasons for departure in the defendant's motions. In response to the State's argument of lack of evidence in the record concerning a self-serving statement of defense counsel, our court noted the broad and expansive wording of 21-4716(c) that allows the court to consider "oral arguments of either the state or counsel for the defendant" and "any other evidence relevant to such aggravating or mitigating circumstances that the court finds trustworthy and reliable." 259 Kan. at 228. That statute and the *Favela* wording specifically allow us to consider not only the testimony at trial and at the sentencing hearing, but also briefs and oral arguments of counsel for the defendant and the State.

The reasons for departure alleged by Favela included his age and his immaturity, his prior record, and the fact that his brother had been stabbed, the victim was at least a participant in the underlying event, no harm resulted, and this was significantly less than typical for such an offense. These situations were relied upon by the trial court and approved in the *Favela* opinion as justification for the dual departures.

In response to the question as to what constitute substantial and compelling reasons for departure, *Favela* stated:

"[T]he legislature did give some guidance in making the determination whether reasons justifying departure are substantial and compelling.

"K.S.A. 1994 Supp. 21-4719(b)(1) states:

'(b) When a sentencing judge departs in setting the *duration of a presumptive term* of imprisonment: (1) The judge shall *consider and apply the enacted purposes and principles of sentencing guidelines* to impose a sentence which is proportionate to the severity of the crime of conviction and the offender's criminal history.' (Emphasis added).

"The Kansas Legislature did not specifically provide statutory purposes and objectives for the sentencing guidelines. However, the Court of Appeals points to the principles and purposes which the guidelines are based upon according to legislative history. These principles are:

'• Prison space should be reserved for serious/violent offenders.

'• The degree of sanctions imposed should be based on the harm inflicted.

'• Sanction should be uniform and not related to socioeconomic factors, race, or geographic location.

'• Penalties should be clear so everyone can understand exactly what has occurred after such are imposed.

'• Incarceration should be reserved for serious violent offenders who present a threat to public safety.

'• The State has an obligation to rehabilitate those incarcerated; but persons should not be sent to prison solely to gain education or job skills, as these programs should be available in the local community.

'• The system must be rational to allow policymakers to allocate resources. See Coates, Summary of the Recommendations of the Sentencing Commission, p. 6-7 (Report to Senate Committee on Judiciary, January 14, 1992). See also Kansas Sentencing Guidelines Implementation Manual (1992), p. i-1-2 (restating the goal and assumptions upon which the guidelines are grounded).' 21 Kan. App. 2d at 210.

"Further, this court has recognized three legislative purposes of the guidelines—(1) reduce prison overcrowding, (2) protect public safety, and (3) standardize sentences so similarly situated offenders are treated the same in order to reduce the effects of racial or geographic bias. *State v. Gonzales*, 255 Kan. 243, 249, 874 P.2d 612 (1994)." 259 Kan. at 233-34.

The factors considered were then found to be substantial and compelling.

Finally, *Favela* held that while an argument could be made that the extent of the departure is without statutory limitation, we do have jurisdiction to review the extent of downward durational de-

partures. *Favela* stated that deference should be granted to the sentencing judge, who had first-hand experience with the defendant and the facts of the case, in determining the extent of the departure. 259 Kan. at 243. The standard of review is abuse of discretion. A trial court abuses its discretion only if no reasonable person could agree with the trial court. *State v. Griffin*, 246 Kan. 320, 326, 787 P.2d 701 (1990). If any reasonable person could agree, the appellate court will not disturb the trial court's discretion. *Hoffman v. Haug*, 242 Kan. 867, 873, 752 P.2d 124 (1988). Under these standards, the trial court's departures were upheld in *Favela.*

The broad implications and holding of *Favela* were viewed as restricting the power of appellate courts to review downward departures by trial courts. See Lewis, The Kansas Sentencing Guidelines Act, 38 Washburn L. J. 327, 370 (1999). Judge Lewis, a judge of the Kansas Court of Appeals and a member of the Kansas Sentencing Commission, suggested that *Favela,* in recognizing that 21-4716(c)(3) allows *oral arguments of either the State or counsel for the defendant* to be considered in determining aggravating or mitigating circumstances, has the effect of making self-serving statements of defense counsel evidence. Judge Lewis further stated: "This is a remarkable departure from what had been the law of this state and definitely eases proving the facts to justify a downward departure." 38 Washburn L. J. at 373.

There is additional wording in *Favela* that was recognized by our court in *State v. Bailey*, 263 Kan. 685, 698-99, 952 P.2d 1289 (1998), as adopting the rule that when a sentencing court relied on statutory aggravating or mitigating factors to depart (as occurred in Minor's case), these reasons should be given great deference by a reviewing court. Although neither of the reasons given for upward departure in *Bailey* were statutory factors, and the defendant there was contending nonstatutory factors were subject to greater scrutiny, we recognized the following quoted passage from the Court of Appeals' concurring and dissenting opinion in *Favela:*

" ' "Cases in which the sentencing court does not rely upon any statutory aggravating or mitigating factors to depart should be viewed with a stricter scrutiny. However, when the sentencing court relies upon statutory aggravating or miti-

gating factors to depart, these reasons should be given great deference by a reviewing court." 21 Kan. App. 2d at 215.' 259 Kan. at 238." 263 Kan. at 698.

Our *Bailey* opinion went on to state: "Although it [the *Favela* opinion] did not expressly adopt this rule, the court's quoting the passage from the concurring and dissenting opinion would indicate agreement with it." 263 Kan. at 699.

The factors upon which the departure was based in Minor's case are those enumerated in K.S.A. 1998 Supp. 21-4716(b)(1)(A), (B), and (E), and under *Favela* and *Bailey* are entitled to "great deference." The trial court found these factors to be substantial and compelling reasons for a downward durational departure.

Several additional Kansas cases deserve mention. What is substantial and compelling was defined in *State v. Rhoads*, 20 Kan. App. 2d 790, 799-800, 892 P.2d 918 (1995), in the following manner:

"The term 'substantial' here refers to something that is real, not imagined, something with substance and not ephemeral. The term 'compelling' here implies that a court is forced, by the facts of a case, to leave the status quo or go beyond what is ordinary. Examples of the term can be found in *State v. Phillips*, 252 Kan. 937, 943, 850 P.2d 877 (1993), where aggravating circumstances can 'compel' the outweighing of mitigating circumstances; *State v. Macomber*, 244 Kan. 396, 405, 769 P.2d 621, *cert. denied* 493 U.S. 842 (1989), which holds that a trial court must have articulable 'compelling' reasons for not using PIK instructions; and *State v. Williams*, 15 Kan. App. 2d 656, 666, 815 P.2d 569 (1991), which states some 'compelling need' must exist for the State to be allowed to obtain certain types of body fluids from a defendant."

A reason such as "has extensive criminal history" was not deemed sufficient in *Rhoads* for a departure. We have not required extensive factual findings where there is clearly evidence to support the finding of instigation and participation by the victim, which the court found in this case. The trial court's comments were crude and expressed in unprofessional street language, but that does not extinguish the fact it heard evidence at the trial and the sentencing hearing and considered defense counsels' arguments in making findings which are substantial and compelling and sufficient to permit the downward departure.

Another recent Kansas case that is applicable to our facts is *State v. Rush*, 24 Kan. 113. In *Rush*, a motion for departure from a presumptive sentence for the crime of rape under K.S.A. 21-3502(a)(2) of 86 to 96 months was granted, and a sentence of 40 months' imprisonment was imposed. This exercise of the trial court's discretion was affirmed by our Court of Appeals in a holding stating that while the aggressive participation of a minor female under 14 years of age in leading up to an act of sexual intercourse is not a defense to a rape charge pursuant to K.S.A. 21-3502(a)(2), it may properly be considered in imposing punishment. *Favela* was relied upon and the statements as to what is substantial and compelling from *Rhoads* quoted above were deemed controlling.

The *Rush* opinion held that the fact the victim was an aggressive participant, by itself, is a sufficient finding under 21-4716(b)(1)(A) to be a substantial and compelling reason to depart. The wording of K.S.A. 21-4719(b)(1) relating to imposing a sentence proportionate to crime severity was quoted. The *Rush* court further noted *Favela's* direction that prison space was to be reserved for violent offenders, and that when mitigating circumstances were found, departing was held to be consistent with the guidelines.

The single authority from outside Kansas relied on in the *Rush* opinion was the Idaho case of *State v. Stiffler*, 114 Idaho 935, 938, 763 P.2d 308 (Ct. App. 1988), *aff'd* 117 Idaho 405, 788 P.2d 220 (1990). *Stiffler* held that while the acts leading to intercourse are not a defense to a rape charge, they may properly be considered in imposing punishment. Applying the *Rush* decision to the facts of our case, it is clear that while a minor female's actions in leading up to a sexual act are not a defense to a charge of aggravated criminal sodomy with a child pursuant to K.S.A. 21-3506(a)(1), such facts may properly be considered by the trial court in imposing punishment. *Rush* provides additional authority to justify the trial court's actions.

An additional Court of Appeals case is particularly applicable. In *State v. Zuck*, 21 Kan. App. 2d 597, 904 P.2d 1005, *rev. denied* 258 Kan. 863 (1995), an upward departure in an attempted rape case from a presumptive sentence of 43 months to 62 months was approved on appeal. The standard of review of *State v. Gideon*,

257 Kan. 591, Syl. ¶ 20, 894 P.2d 850 (1995), was restated. The emotional problems suffered by the victim were deemed sufficiently severe to warrant a departure. However, because clear statutory language did not indicate otherwise, the age of the victim was not deemed to be a substantial and compelling factor. While not all of the reasons given for departure were sufficient, the court held departure is justified if one or more of the factors relied upon is found to be substantial and compelling.

The *Zuck* court stated: "In Kansas there is no legal requirement that all the reasons given by a sentencing court to support a departure sentence be substantial and compelling if one or more of such factors relied upon is substantial and compelling. *State v. Gideon*, 257 Kan. 591, 627, 894 P.2d 850 (1995)." 21 Kan. App. 2d at 606.

In this case, there are problems with the trial court's reliance on factors (B) and (E) of 21-4716(b)(1), while there is conflicting evidence as to the existence of factor (A) (The victim was an aggressor or participant in the criminal conduct associated with the crim of conviction).

There was testimony from A.C. that she said "no" when asked for a "blow job" and that when Minor placed his penis in her mouth, he held her head in his hands. Minor's testimony was to the contrary in that he stated A.C. was the one who turned off the lights and had requested sexual activity. The testimony of a nonparticipant, S.R., supports Minor: "A.C. told me she wanted to have sexual intercourse with him . . . ," as does the testimony of Detective Schondelmaier, who said he did not believe Minor forced A.C. into the act. This would be substantial competent evidence to justify and uphold the trial court's finding that the victim was a participant in the crime. The trial court resolved the conflict and clearly had a proper basis for the finding that the victim was a participant in the criminal conduct associated with the crime.

Under the holdings of *Zuck, Rush, Rhoads, Bailey,* and *Favela,* there is a sufficient evidentiary basis for finding there was a statutory factor sufficient to be a substantial and compelling reason for the departure. The trial court did not abuse its discretion in entering the downward departure sentence in this case.

It is highly questionable that the defendant could be considered to have played a minor or passive role in the crime, which clearly involved the active participation of both parties. To the extent this factor was relied upon by the trial court, it is specifically disapproved as being without factual basis and cannot, under the facts of this case, be a substantial and compelling reason for a departure sentence as allowed by K.S.A. 1998 Supp. 21-4716(b)(1)(B).

There is likewise nothing in the record to show that "[t]he degree of harm or loss attributed to the current crime of conviction was significantly less than typical for such an offense." K.S.A. 1998 Supp. 21-4716(b)(1)(E). We have no statements or evidence as to what is "typical for such an offense" and no showing as to how the facts in this case make the "degree of harm or loss . . . significantly less." To the extent this factor was relied upon by the trial court, it is specifically disapproved.

The State's final argument is that the trial court's departure from appropriate judicial decorum in its comments reflect bias, partiality, and prejudice requiring the departure to be overturned.

The statutory basis for this argument is set forth in K.S.A. 21-4721, which relates to appeals of departure sentences and states in applicable part: "(e) In any appeal, the appellate court may review a claim that: (1) A sentence that departs from the presumptive sentence resulted from partiality, prejudice, oppression or corrupt motive."

Minor characterizes the comments of the sentencing judge as uncouth, but argues the only "sentiment" being expressed by the judge through his comments were that the presumptive sentence was excessive given A.C.'s willing participation in the sexual act.

We do not approve of the sentencing judge's crude and undignified comments. They have resulted in a finding that the judge violated Canons of Judicial Conduct 2A (1999 Kan. Ct. R. Annot. 465) ("A judge shall . . . act at all times in a manner that promotes public confidence in the integrity . . . of the judiciary.") and 3B(4) (1999 Kan. Ct. R. Annot. 446) ("A judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity . . . ."). See State of Kansas, Before The Commission on Judicial Qualifi-

cations, Inquiry Concerning a Judge, Docket No. 645, filed June 12, 1997. This finding and the resulting discipline does not invalidate the findings and rulings of the sentencing court, nor does it show the departure was the result of partiality, prejudice, oppression, or corrupt motive.

The trial court was appalled by the actions of both Minor and A.C. There was never a question that Minor was going to be imprisoned; it was only for how long. The sentence was lowered to what in the trial judge's mind was a "more reasonable and livable" sentence.

The sentence reduction in this case is less proportionally than was affirmed in *Favela*. Minor is being required to serve 6 years in prison. While this may not be what any individual member of this court would wish under the facts of this case, our standard of review is not de novo.

We would hope that no other sentencing judge would ever use the language found in this case, and the judge has been disciplined for doing so. But, the overriding result is that there was no showing of partiality, prejudice, oppression, or corrupt motive and no abuse of the trial court's discretion.

The conviction of aggravated criminal sodomy is affirmed. The departure sentence is affirmed.

McFARLAND, C.J., concurring in part and dissenting in part: I concur in those portions of the opinion which affirm defendant's conviction of aggravated criminal sodomy and which disapprove of two of the three statutory factors relied upon by the sentencing court in entering the downward durational departure sentence. I dissent from the opinion's conclusion that the remaining factor and the evidence thereof was legally sufficient to support the downward departure sentence.

The factor found legally sufficient herein is K.S.A. 1998 Supp. 21-4716(b)(1)(A), which provides in pertinent part:

"(A) The victim was an aggressor or participant in the criminal conduct associated with the crime of conviction."

Specifically, the judge stated the victim was a participant in crime.

K.S.A. 21-4721 concerns appellate review of departure sentences and provides in pertinent part:

"(d) In any appeal from a judgment of conviction imposing a sentence that departs from the presumptive sentence prescribed by the sentencing grid for a crime, sentence review shall be limited to whether the sentencing court's findings of fact and reasons justifying a departure:
(1) Are supported by the evidence in the record; and
(2) constitute substantial and compelling reasons for departure."

Whether the factors relied upon by the court constitute substantial and compelling reasons for departure is a question of law. The court must state on the record at the time of sentencing the substantial and compelling reasons for the departure. The court's comments at the time of sentencing govern as to the reasons for departure. *State v. Jackson*, 262 Kan. 119, 134-35, 936 P.2d 761 (1997).

The term "substantial" refers to something that is real, not imagined, something with substance and not ephemeral. The term "compelling" implies that the court is forced, by the facts of the case, to leave the status quo or go beyond what is ordinary. *State v. Eisele*, 262 Kan. 80, 84, 936 P.2d 742 (1997).

The legislature has determined the presumptive sentence herein. Only if there is a substantial reason that is so out of the ordinary that it compels imposition of a greater or lesser sentence may the court depart from the presumptive sentence. What is the evidence in this case that "compels" the sentence imposed to be less than that determined by the legislature to be appropriate for the crime of aggravated sodomy?

The victim was 13 years old at the time. Her age alone would make the offense aggravated sodomy as opposed to sodomy. Neither force nor fear need be shown as elements of the offense where the victim is 13 years old. So their absence is no basis for a downward departure. Their presence could support an upward departure, as they would constitute an aggravating circumstance.

The victim may have told a third person prior to the incident she wanted to have sexual intercourse with defendant. She voluntarily accompanied defendant to the bedroom. However, she consistently stated she never consented to perform oral sex on de-

fendant and had told him she did not want to do that type of act. It is undisputed defendant then took hold of her head and put his penis in her mouth. He was 23 years old, married, and a father. He had a prior juvenile conviction for indecent liberties with a minor. Defendant went to the victim's house (she was a former neighbor) because he was "bored." Defendant sought the victim out.

Where in the facts before the judge is there any basis to conclude there is a compelling reason to depart from the legislatively determined presumptive sentence based upon participation by the victim? The actual departure was not minimal. The departure sentence was less than a third of the presumptive sentence. The victim did not consent to the act and did not want it, and her "participation" was having her head held while defendant inserted his penis in her mouth. There simply is no legally sufficient basis for the departure sentence herein.

But this does not end the discussion. The sentencing judge's gutter language and total disregard for his judicial role resulted in a sentencing that was a total farce.

The judge was very clear that he believed the presumptive sentence was far too high for any "blow job" by a 13-year-old girl. He stated the same act by a 40-year-old would be worth more of a penalty than for the act done by a 13-year-old. Apparently, the judge believed the degree of sexual satisfaction achieved by the perpetrator of the sexual crime was a factor to be considered at sentencing.

The judge also expressed his irritation at young girls in general who he perceived to be flaunting themselves and thereby causing men to have criminal charges filed against them, as he believed was evidenced by this and other cases he had heard involving different individuals. He obviously disliked the victim and what he thought she represented. The judge characterized his own comments as a "rant and rave" against the Kansas Sentencing Guidelines.

The judge was disciplined by the Commission on Judicial Qualifications for his handling of the sentencing hearing herein, upon

the findings he violated Canon 2A and Canon 3B(4) of the Code of Judicial Conduct, which provide:

"Canon 2

"*A Judge Shall Avoid Impropriety and the Appearance
of Impropriety in All of the Judge's Activities*

"A. A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Supreme Court Rule 601A (1999 Kan. Ct. R. Annot. 465).

"Canon 3

"*A Judge Shall Perform the Duties of Judicial Office
Impartially and Diligently*

. . . .

"[B] (4) A judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity, and shall require similar conduct of lawyers, and of staff, court officials and others subject to the judge's direction and control." Supreme Court Rule 601A (1999 Kan. Ct. R. Annot. 466).

Further, our Preamble to the Code of Judicial Conduct reiterates the importance of judicial decorum:

"Our legal system is based on the principle that an independent, fair and competent judiciary will interpret and apply the laws that govern us. The role of the judiciary is central to American concepts of justice and the rule of law. Intrinsic to all sections of this Code are the precepts that judges, individually and collectively, must respect and honor the judicial office as a public trust and strive to enhance and maintain confidence in our legal system. The judge is an arbiter of facts and law for the resolution of disputes and a highly visible symbol of government under the rule of law." Rule 601A (1999 Kan. Ct. R. Annot. 461).

Recently, in *State v. Scales*, 261 Kan. 734, 933 P.2d 737 (1997), in a unanimous opinion authored by Justice Davis on petition for review from the Court of Appeals, we vacated a trial court's imposition of a maximum presumptive sentence due to judicial misconduct. Although the underlying facts of that case involved a judge's ex parte communication with the victim's family, a situation not involved here, our discussion about judicial decorum and conduct still applies and is equally applicable to the judicial misconduct here.

In *Scales*, the defendant appealed his sentence, alleging that it was imposed as a result of partiality, prejudice, oppression, or cor-

rupt motive and amounted to an abuse of discretion. While the Court of Appeals acknowledged that the trial court's ex parte communication violated the Code of Judicial Conduct, it nonetheless concluded that the defendant had failed to prove an abuse of discretion. We disagreed, noting that "we need look no further than the nature of the hearing that took place upon sentencing to conclude that the proceeding was inherently unfair." 261 Kan. At 738. While not all ex parte communications with a trial court require reversal, we held the communications in *Scales* "undermine any confidence we have in the impartiality of the sentencing proceeding." 261 Kan. at 738. The judicial misconduct in the case before us here is far more egregious than that in *Scales*.

Impartiality is at the foundation of our criminal justice system and applies equally to both the State and the defendant. We quoted Justice Cardozo in *Scales*, as follows:

"Justice Cardozo emphasizes the importance of the appearance of impartiality: 'One of the most fundamental social interests is that law shall be uniform and impartial. There must be nothing in its action that savors of prejudice or favor or even arbitrary whim or fitfulness.' Cardozo, The Nature of the Judicial Process, p. 112 (1921), as quoted in Shaman, [Lubert & Alfini,] Judicial Conduct and Ethics § 3.01 ([2d ed.] 1995)." 261 Kan. at 739.

Returning to the source of the above quote, we find that Shaman also stated:

"Because a judge's courtroom conduct symbolizes the law in action, a judge compromises the notion that the law is uniform and impartial in its application by failing to adhere to the dictates of those provisions of the Code dealing with a judge's behavior in performing his or her adjudicative responsibilities, particularly those of Canon 3B of the 1990 Model Code . . . ." Shaman, Lubert & Alfini, Judicial Conduct and Ethics § 3.01 (2d ed. 1995).

The judge's tirade attacking and castigating the 13-year-old victim in this case, as well as the 14-year-old victim in an unrelated case heard the same day, usage of gutter language while trivializing defendant's culpability, and challenging the legislative decision to severely punish criminals who have sexual relations with underage victims made a shambles of this proceeding and raised questions of his ability to apply the laws of this state in a fair and impartial manner. This court's judicial duty is to strive to enhance and main-

tain confidence in our legal system. I believe the judge's comments show partiality, prejudice, and oppression against female victims of sex crimes rarely seen in today's courts. His appalling conduct vitiated the entire proceeding.

The only thing substantial and compelling in this case is the need to vacate the sentence imposed and to remand this case for resentencing before an impartial judge who will conduct the proceeding with judicial decorum, hear all relevant evidence, and make such findings as he or she may deem appropriate concerning whether a legally factual basis exists which compels a downward durational departure.