(198 P.3d 203)
No. 99,633

STATE OF KANSAS, *Appellant*, v. JAMES PAUL THOMAS, *Appellee*.

Opinion filed January 9, 2009.

*Christina Trocheck*, assistant county attorney, *Ellen Mitchell*, county attorney, and *Stephen N. Six*, attorney general, for appellant.

*Wm. Rex Lorson*, of Salina, for appellee.

Before GREENE, P.J., MALONE, J., and KNUDSON, S.J.

MALONE, J.: The State appeals the district court's imposition of a dispositional departure sentence for James Paul Thomas, who pled guilty to aggravated indecent liberties with a child. We conclude that the district court's findings of fact and reasons justifying the departure do not constitute substantial and compelling reasons for departure as a matter of law. Accordingly, we remand the case to the district court for imposition of a presumptive sentence unless the district court makes additional findings warranting a departure.

On April 18, 2007, the State charged Thomas with rape or, in the alternative, aggravated indecent liberties with a child. The alleged incident occurred in December 2006, and the victim was M.N.R. On July 23, 2007, Thomas pled guilty to aggravated indecent liberties with a child, and in exchange the State dismissed the rape charge. Prior to sentencing, Thomas filed a motion for a durational and/or dispositional departure. The motion asserted as grounds for departure that the victim was an aggressor in the criminal activity and that the degree of harm or loss attributed to the crime was significantly less than typical for such an event. An amended motion for departure also asserted, among other grounds, that Thomas had no prior convictions of any kind as shown in the presentence investigation report. Thomas underwent a sex offender evaluation with Richard W. Burnett, a licensed specialist clinical social worker, who recommended that Thomas be placed on probation.

The district court held a sentencing hearing on October 15, 2007. Burnett testified that he did not believe Thomas would be a risk to society if placed on probation. However, Burnett acknowledged that his evaluation relied solely on information received from Thomas. Burnett did not review police reports or transcripts, and he did not interview any other witnesses. Burnett testified that it would be a cause for concern if Thomas had provided him with inaccurate information during the evaluation.

Thomas testified that in December 2006, when he was 19 years old, he had been going to M.N.R.'s house two or three times a

week on a friendship basis. On the day of the incident, Thomas was at M.N.R.'s house during the day, and before he left, M.N.R. asked him to return that night so the two of them could watch movies. Thomas returned to watch the movies, and he and M.N.R. were alone as M.N.R.'s mother had already gone to bed. According to Thomas, M.N.R. told him that he could stay the night. Thomas testified that M.N.R. then left the room and returned wearing only a t-shirt and underwear. According to Thomas, M.N.R. put her hand on his leg and "started playing with herself and she grabbed my hand and just kind of motioned me down to where she was." Thomas then had sexual intercourse with M.N.R. Thomas admitted that after M.N.R. told him "no," he continued intercourse for 2 or 3 minutes until he ejaculated, but stated that he "didn't understand it as a 'no,' it was just kind of like a little grunt or whatever."

Thomas testified this was the only time he and M.N.R. had intercourse. Thomas stated that he did not know M.N.R. was only 15 years old at the time of intercourse, but upon discovering her age later that night, he went to the bathroom to collect his thoughts because he knew what he had done was wrong. Thomas stated that after the incident, M.N.R. sent him text messages and three topless pictures over the phone. Thomas denied text messaging M.N.R. to apologize for raping her.

Officer Jeremy Watkins from the Salina Police Department interviewed Thomas during his investigation. Watkins' testimony contradicted Thomas' as follows: (1) Thomas told Watkins that he knew M.N.R. was 15 years old prior to intercourse; (2) Thomas told Watkins he had intercourse with M.N.R. three or four times; (3) Thomas told Watkins that during intercourse, M.N.R. told him to stop and that she was crying; and (4) Thomas told Watkins that he text messaged M.N.R. several times the day after the incident. Watkins also interviewed M.N.R. during his investigation. According to Watkins, "[M.N.R.] stated that [she and Thomas] had intercourse one time at her house and that she was raped."

M.N.R. also testified at the sentencing hearing, and her testimony contradicted Thomas' as follows: (1) M.N.R. was lying on the floor and Thomas got on top of her; (2) M.N.R. told Thomas

to stop, began crying, and attempted to get Thomas off; (3) after intercourse, M.N.R. and Thomas both cried and Thomas apologized; (4) Thomas kept sending M.N.R. text messages to say that he was sorry and that he did not want to live with himself knowing what he did; and (5) Thomas knew how old M.N.R. was the first time they met.

After hearing the evidence, the district court failed to make explicit findings resolving the many instances of contradictory testimony. The district court imposed a presumptive sentence of 59 months' incarceration. However, the district court granted Thomas' motion for a dispositional departure and placed Thomas on probation with community corrections for 36 months. The district court cited two reasons for the departure: (1) Thomas had no criminal history and (2) M.N.R.'s conduct leading to the offense, specifically her suggestive behavior in wearing only a t-shirt and underwear while watching television with Thomas late at night. The sentencing judge's findings, in their entirety, were as follows:

"First of all note [Thomas] has no prior criminal history. I don't wish to mean in any way political incorrect or make any untoward statements here, but I would be very remiss if I didn't make some comment.

"I am greatly concerned where this young man is looking at five years in prison. I want to know why a not quite sixteen year old was sitting late at night watching movies, we know not of what kind, with a boy, dressed in underwear and a tank top. If that is not some sort of sexual suggestion, it may not be aggression, but it certainly . . . I don't think I'm that out of touch that . . . I have to agree with [defense counsel].

"Having raised six teenagers, I think we'd be awfully naive to consider that that's not some sort of a suggestive behavior, or whether intentional or not, I can't believe she was sitting there in her underwear and tank top while her parents, or her mother, was still awake in the building.

"There's got to be some awareness here, by [an] almost sixteen year old, of the hormonal makeup of a nineteen year old male and while it doesn't excuse the behavior, it certainly goes a long way in explaining the behavior and it goes to support the idea that if the victim here was not necessarily an aggressor, there certainly was some mitigating conduct on her behalf that mitigates the conduct of [Thomas] in this case.

"It just . . . I'm sorry, for lack of a better word, it just doesn't seem fair to send this young man to prison under those circumstances and I think that the conditions posed by Community Corrections would address the situation in this case.

"The Court's going to grant the Motion for Dispositional Departure upon the finding it has substantial and compelling reasons that the conduct of the victim leading to the offense [and] the fact that [Thomas] has no prior criminal history."

The journal entry of sentencing listed the departure factors as: "1. CONDUCT OF VICTIM LEADING TO THE OFFENSE— WEARING ONLY UNDERWEAR & TEE-SHIRT WHILE WATCHING TELEVISION WITH THE DEFENDANT LATE AT NIGHT. 2. AGE OF DEFENDANT." The State timely appeals.

Appellate review of a departure sentence is limited to whether the sentencing court's findings of fact and reasons justifying a departure (1) are supported by substantial competent evidence in the record and (2) constitute substantial and compelling reasons for a departure. K.S.A. 21-4721(d); *State v. Blackmon*, 285 Kan. 719, 724, 176 P.3d 160 (2008). The district court must "state on the record at the time of sentencing the substantial and compelling reasons for the departure." K.S.A. 21-4716(a). The district court's comments at the time of sentencing govern as to the reasons for departure. *State v. Snow*, 282 Kan. 323, 345, 144 P.3d 729 (2006).

Here, there is no significant dispute whether the district court's findings of fact and reasons justifying Thomas' departure sentence were supported by substantial competent evidence in the record. The primary issue on appeal is whether the district court's findings of fact and reasons justifying the departure constitute substantial and compelling reasons for a departure. Whether the facts relied upon by the sentencing court constitute substantial and compelling reasons for a departure is a question of law over which an appellate court has unlimited review. *State v. McKay*, 271 Kan. 725, 728, 26 P.3d 58 (2001).

K.S.A. 21-4716(c)(1) provides a list of nonexclusive substantial and compelling departure factors. The only statutory departure factor discussed by the parties in their briefs as being applicable to this case is found at K.S.A. 21-4716(c)(1)(A): "The victim was an aggressor or participant in the criminal conduct associated with the crime of conviction." The Kansas Supreme Court has ruled that a sentencing court's use of statutory factors for departure should not be reviewed with greater deference than nonstatutory

factors, and nonstatutory departure factors are not subject to stricter scrutiny than those enumerated in the statute. *State v. Martin*, 285 Kan. 735, 747, 175 P.3d 832 (2008). The only additional requirement for the court's use of nonstatutory factors to support a departure sentence is that they be consistent with the intent and purposes of the sentencing guidelines. *State v. Tiffany*, 267 Kan. 495, 506, 986 P.2d 1064 (1999).

At the sentencing hearing, the district court identified only two reasons in justifying Thomas' dispositional departure: (1) Thomas had no criminal history and (2) M.N.R.'s conduct leading to the offense, specifically her suggestive behavior in wearing only a t-shirt and underwear while watching television with Thomas late at night. The journal entry of sentencing failed to identify Thomas' lack of criminal history as a departure factor although the district court expressly relied on this factor at the sentencing hearing. The journal entry of sentencing also included "age of defendant" as one of the reasons for granting the departure. Although the sentencing judge, in his comments from the bench, referred to Thomas as being 19 years old, the judge did not rely on Thomas' age as a separate reason for granting the departure. As we have previously noted, the district court's comments at the time of sentencing govern as to the reasons for departure. *Snow*, 282 Kan. at 345. Therefore, we will not address the additional reason included in the journal entry which was not relied on by the district court at the time of sentencing.

We will first address whether Thomas' lack of criminal history constitutes a substantial and compelling reason for a departure sentence. In *State v. Richardson*, 20 Kan. App. 2d 932, 941-43, 901 P.2d 1 (1995), the court upheld a dispositional departure sentence premised on the length of time since the defendant's last felony conviction. In doing so, however, the court determined that "[a] defendant's criminal history cannot be used as justification for a departure sentence when the sentencing guidelines have already taken the defendant's criminal history into account in determining the presumptive sentence within the grid." 20 Kan. App. 2d 932, Syl. ¶ 2.

Thomas cites *State v. Murphy*, 270 Kan. 804, 19 P.3d 80 (2001), *abrogated on other grounds by Martin*, 285 Kan. 735. In *Murphy*, the Kansas Supreme Court determined that the defendant's lack of criminal history, by itself, is not sufficient to justify a departure sentence, but it "could be considered in the overall picture." 270 Kan. at 807. Stated differently, a defendant's lack of criminal history, standing alone, is not a substantial and compelling reason for departure because this factor is already taken into account in the sentencing grid. Based upon *Richardson* and *Murphy*, we conclude that Thomas' lack of criminal history is not sufficient to justify a departure sentence unless there is at least some other factor upon which the court may properly rely.

Based upon the judge's comments at the sentencing hearing, it appears that the district court's primary reason for granting the departure sentence was M.N.R.'s conduct *leading to the offense*. Specifically, the district court relied upon the undisputed evidence that M.N.R. was wearing only a t-shirt and underwear while watching television with Thomas late at night. The district court found this conduct constituted "some sort of sexual suggestion" and indicated that M.N.R. should have been aware of the hormonal makeup of a 19-year-old male such as Thomas. However, the district court stopped short of finding M.N.R.'s conduct as aggressive or that she consented to and participated in Thomas' criminal conduct.

Determination of whether M.N.R.'s conduct leading to the offense constituted a substantial and compelling reason for departure requires this court to consider two questions. First, was M.N.R.'s conduct sufficient to bring it under the purview of K.S.A. 21-4716(c)(1)(A), *i.e.*, was M.N.R. an aggressor or participant in the crime? Second, if M.N.R.'s conduct did not rise to the level of aggression or participation in the crime, did her conduct constitute a *nonstatutory* ground for granting a dispositional departure?

Both questions are best answered by reviewing existing Kansas cases. In *State v. Minor*, 268 Kan. 292, 313, 997 P.2d 648 (2000), the Kansas Supreme Court upheld the district court's downward durational departure sentence in a conviction for aggravated criminal sodomy because of the victim's participation and actions lead-

ing to oral sex. The defendant testified that the victim initiated the oral sex, including preparations therefor. This testimony was corroborated by the investigating officer, who testified that the victim was a willing and active participant, and by a friend of the victim, who testified that the victim stated she wanted to have intercourse with the defendant. The victim also corroborated that the oral sex was consensual. The Supreme Court concluded that the victim was an aggressor or participant in the criminal conduct and that this evidence supported the statutory ground for a departure sentence. 268 Kan. at 311.

*State v. Sampsel*, 268 Kan. 264, 997 P.2d 664 (2000), is similar to *Minor*. In *Sampsel*, the Kansas Supreme Court upheld the district court's downward durational departure sentence in a conviction for aggravated indecent liberties with a child because of the victim's participation and actions leading to intercourse. The victim stated that she wanted to have intercourse with the defendant, made advances toward him, and had consensual intercourse according to multiple witnesses. The Supreme Court concluded that the evidence supported the statutory ground that the victim was a participant in the criminal conduct. 268 Kan. at 281.

In *State v. Rush*, 24 Kan. App. 2d 113, 115, 942 P.2d 55, *rev. denied* 262 Kan. 968 (1997), the court upheld the district court's downward durational departure sentence in a conviction for rape of a child under 14 years of age because the victim was a sexual aggressor toward the defendant. The victim was found to be an aggressor because she willingly took her shirt off when asked, made advances towards the defendant, and then willingly had intercourse with him. The court concluded that this evidence supported the statutory ground for a departure sentence. 24 Kan. App. 2d at 115.

Returning to our facts, the district court did not specifically find that M.N.R.'s conduct rose to the level of aggression or participation in the crime. In fact, the district court acknowledged that M.N.R.'s conduct did not amount to aggression. *Minor, Sampsel,* and *Rush* all involved instances where the victim actually participated in the sexual conduct and consented to it. At the very least, the cases involved conduct by the victim that was more provocative, aggressive, or participatory than merely asking someone to spend

the night and then entering the room wearing only a t-shirt and underwear.

If the district court had found that M.N.R. participated in the sexual intercourse and consented to it, K.S.A. 21-4716(c)(1)(A) would likely apply. However, the district court made no such finding, although there was evidence from Thomas to support such a finding. Instead of concentrating on the conflicting testimony concerning whether M.N.R. participated in the sexual intercourse and consented to it, the district court only made findings concerning M.N.R.'s conduct leading to the offense, specifically that M.N.R. was wearing only a t-shirt and underwear while alone with Thomas. We conclude the conduct of M.N.R., as found by the district court, did not rise to the level of aggression or participation required to furnish a substantial and compelling reason for departure under K.S.A. 21-4716(c)(1)(A).

We must next determine whether M.N.R.'s conduct leading to the offense created a substantial and compelling reason to grant a dispositional departure independent of the statute. The use of nonstatutory departure factors is permitted provided they are consistent with the intent and purposes of the sentencing guidelines. *Tiffany*, 267 Kan. at 506.

As we have previously stated, the district court focused on the fact that M.N.R. was wearing only a t-shirt and underwear while watching television with Thomas late at night. The district court categorized this as sexually suggestive behavior and noted that M.N.R. should have been aware of the hormonal makeup of a 19-year-old male such as Thomas. However, the district court made no further findings to support the dispositional departure. There was conflicting evidence as to whether M.N.R. actively participated in the sexual intercourse and consented to it, but the district court never resolved the conflicting evidence.

We are unwilling to conclude that M.N.R.'s behavior in wearing only a t-shirt and underwear while alone with Thomas constitutes a substantial and compelling reason for a departure as a matter of law. Had the district court made specific findings that M.N.R. participated in the sexual intercourse and consented to it, this would have supported a departure sentence. Based upon the record, how-

ever, we conclude that the district court's findings of fact do not constitute a substantial and compelling reason to grant a dispositional departure independent of the statute.

Thomas' case is remanded to the district court for resentencing. Upon remand, the district court must impose a presumptive sentence unless the district court makes additional findings warranting a departure.

Reversed and remanded.

GREENE, J., dissenting: I respectfully disagree with my colleagues' conclusions that the dispositional departure is not supported by the district court's findings and otherwise is not a substantial and compelling reason to depart, and I would affirm the district court.

As recognized by the majority, when the sentencing court imposes a dispositional departure, our review is limited to determining whether the district court's findings and reasons justifying a departure are supported by substantial competent evidence in the record and whether they constitute substantial and compelling reasons for a departure. *State v. Blackmon*, 285 Kan. 719, 724, 176 P.3d 160 (2008).

The initial question posed for our panel is whether the findings encompassed in the district court's comments are supported by the record. I find the record replete with evidence to support these findings. First, the sexual offender evaluation of Thomas reports the following:

"He began a relationship with the victim as friends. They were friends about three or four months. They then became friends with benefits during which they had sexual intercourse, she performed oral sex, and he performed oral sex on her. She was on his phone plan. He got irritated with her and took her off his phone plan. She got highly upset. She told her parents what was going on, her dad went to the police and the client was arrested [some four months after the incident charged].

. . . .

"He met the victim through a friend at the Smoky Hill River Festival. They were friends about three or four months. She initiated their first time having sex at her house. They had sexual intercourse and mutual oral sex one evening. She had shaved. He assumed the girl was sixteen or seventeen.

"Since being arrested he has had sexual intercourse with a sixteen year old female friend that he has known since high school. He was dating her when he got arrested for the fifteen year old. They have sex two to three times a week. Their sex is restricted to intercourse mainly because of her preference and his not enjoying oral sex with a girl unless she shaves.

. . . .

"I recommend Mr. James Thomas be placed on probation."

Second, although the district court made no express findings as to credibility of either the victim or the defendant, the court's comments—coupled with its lecture to the victim—suggest that the court found few if any discrepancies in the defendant's story. According to Thomas, the victim invited him to come back to her house and watch movies; during the movies, she asked him to stay the night. After that invitation, she "said she would be right back and she came back with a t-shirt and underwear on only and she sat in the chair across the room" until joining him on the couch. "And then I was going to go to bed and she just had her hand on my leg and then she went down to the floor, because she slept on the floor that night and she was down on the floor and she started playing with herself and she grabbed my hand and just kind of motioned me down to where she was." During cross-examination, Thomas confirmed that the victim "was the one who initiated any sexual contact."

Third, the victim's testimony did not expressly controvert Thomas' version of events, except that "once intercourse started," she told him to stop. When given an opportunity to say that Thomas removed her clothing, the victim would not do so, choosing instead to use the passive voice.

"Q. And I'm probably not making myself very clear. Before the intercourse started, did the Defendant or you take your clothing off?
"A. Ugh-uh (negative sound).
"Q. What did he do?
"A. They got pushed.
"Q. They got pushed to the side?
"A. No audible response.
"Q. Okay. You said that you told him to stop?
"A. Yes, I did."

The findings of the district court include (1) the victim's conduct was sexually suggestive; (2) there was "mitigating conduct" on behalf of the victim that mitigates the conduct of the defendant; and (3) the conduct of the victim leading to the offense was a substantial and compelling reason for the departure. Although the court did not employ the magic word "participated" or "participation" from K.S.A. 21-4716(c)(1)(A), it is clear to me that these findings can and should be read to mean that the defendant "participated" in the acts charged. Even if the magic word from the statute was not intended, these findings suggest that the court found the victim's "sexual suggestion" or "mitigating conduct" to be encouragement to commit the offense, or otherwise a nonstatutory ground to support a dispositional departure.

In rejecting the district court's findings as either unsupported or unsubstantial, the majority has mistakenly focused principally on "aggression." Such focus is incomplete. The statute, K.S.A. 21-4716(c)(1)(A), counts "participation" as equivalent to "aggressor," and I respectfully suggest the majority has not adequately considered the victim's *participation* in the initiation of the events that gave rise to the charge, including the victim's invitations to her home for the night, suggestive clothing or lack thereof, physical proximity to the defendant, exhibition of her own sexual gratification, and "grabbing" the defendant's hand and motioning him down to her as a part of that gratification. Again, the victim did not controvert these aspects of the defendant's story, although it appears she was not asked in a direct manner to do so. In fact, scrutiny of the record reveals that there is absolutely no evidence to suggest that the victim resisted intercourse until sometime after it was commenced. Careful review of the record reveals very little dispute as to essential facts; I disagree with the majority in its reference to "factual contradictions."

I respectfully suggest that these circumstances have proven a substantial and compelling reason for departure and have previously been viewed as adequate for this court to affirm dispositional departures. As a panel of our court held in *State v. Haney*, 34 Kan. App. 2d 232, 241, 116 P.3d 747 (2006), "[t]o the extent sexual activity is *encouraged* by an underage victim, the legislature has

provided for mitigation. See K.S.A. 2004 Supp. 21-4716(c)(1)(A). Likewise, the legislature and the courts have considered the relative immaturity of an offender in providing for mitigation." (Emphasis added.) Here, the record is replete with unrefuted evidence of "encouragement" by the victim, and that characterization of her conduct is rather mild given the facts. This dispositional departure is also consistent with other case authority from our appellate courts, including those cited by the majority. See, *e.g.*, *State v. Chapman*, No. 95,687, unpublished opinion filed March 23, 2007.

With due respect to my colleagues, I think reversal and remand here is unnecessary. I suggest that on remand the district court judge need do little more than support the departure by making a record that he finds the defendant's story credible and that the victim "encouraged" or "participated" in the conduct that gave rise to the defendant's conviction. Concluding that the record is already more than adequate in this regard, I do not think the failure to use the magic word "participation" on the record merits a reversal under these circumstances. I would simply affirm the dispositional departure.