IN THE SUPREME COURT OF THE STATE OF KANSAS

Nos. 128,381
128,517

STATE OF KANSAS,
*Appellee*,

v.

DANIEL OSWALD LOPEZ,
*Appellant*.

SYLLABUS BY THE COURT

1.

Under K.S.A. 21-6620(c)(1)(A), (2)(A) and K.S.A. 21-6623, a defendant convicted of first-degree premeditated murder must be sentenced to life imprisonment without the possibility of parole for 50 years unless, after reviewing mitigating circumstances, the district court finds substantial and compelling reasons to impose a departure sentence of life imprisonment without the possibility of parole for 25 years.

2.

In this context, a reason is substantial if it is real and of substance and not imagined or ephemeral. A reason is compelling if the facts of the case force the court to depart from the statutorily presumed sentence.

3.

An appellate court reviews a district court's ruling on a departure motion for abuse of discretion. A district court abuses its discretion if its decision is arbitrary, fanciful, or unreasonable, meaning no reasonable person would agree with the decision; is based on an error of law; or is based on an error of fact, meaning the factual findings are not

1

supported by substantial competent evidence. The party asserting an abuse of discretion bears the burden of establishing such abuse.

Appeal from Sedgwick District Court; ERIC WILLIAMS, judge. Submitted without oral argument January 29, 2026. Opinion filed March 13, 2026. Affirmed.

*Debra J. Wilson*, of Capital Appeals and Conflicts Office, was on the brief for appellant.

*Kristi D. Allen*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

STANDRIDGE, J.: Daniel Oswald Lopez entered guilty pleas to first-degree premeditated murder and reckless second-degree murder arising from the shooting deaths of his live-in girlfriend, M.S., and their eight-year-old daughter, N.S. Before sentencing, Lopez filed a motion asking the district court to reduce the minimum time he must serve by departing from the mandatory hard 50 life sentence for his first-degree murder conviction and/or imposing concurrent, rather than consecutive, sentences. At sentencing, the district court denied Lopez' motion and imposed a hard 50 life sentence for first-degree murder, consecutive to 184 months' imprisonment for second-degree murder.

On appeal, Lopez argues the district court abused its discretion in denying his request for a departure sentence. For the reasons discussed below, we conclude the district court did not abuse its discretion and affirm Lopez' sentence.

FACTUAL AND PROCEDURAL BACKGROUND:

Lopez and M.S. were involved in an on-and-off intimate relationship for several years. They shared a daughter, N.S. On March 30, 2020, M.S.'s mother went to the

2

Wichita residence that M.S. shared with Lopez and eight-year-old N.S. after learning that M.S. did not show up for work that day. M.S. and N.S. were found dead on the couch inside, each killed by a single gunshot wound. Based on the condition of the bodies and the presence of dried blood at the scene, it appeared they had been there for some time.

Law enforcement's investigation led them to suspect Lopez was the shooter and that he had killed M.S. and N.S. on the evening of March 28. Lopez was eventually taken into custody on April 10, 2020.

The State charged Lopez with one count each of domestic violence capital murder, criminal possession of a weapon, and aggravated assault. The State later filed notice of its intent to seek the death penalty because the case involved the death of more than one person. See K.S.A. 21-6624(b).

The case proceeded toward trial, but the parties ultimately entered into a plea agreement in June 2024. Under the agreement, Lopez pled guilty to amended charges of first-degree premeditated murder for killing M.S. and reckless second-degree murder for killing N.S. In exchange for Lopez' guilty pleas, the State dismissed the remaining counts in the case and recommended the court impose consecutive sentences of life without the possibility of parole for 50 years for the first-degree murder conviction and the high number in the appropriate sentencing grid box for the second-degree murder conviction, or 184 months based on Lopez' anticipated criminal history score of E. The plea agreement allowed Lopez to argue for any legal sentence, while the State reserved the right to object to any request for departure and/or concurrent sentences.

As allowed by the plea agreement, Lopez filed a motion for a downward departure sentence. Noting that the presumptive sentence for his crimes would result in a minimum 65-year sentence if imposed consecutively, Lopez asked the court to depart from the presumptive hard 50 sentence for first-degree premeditated murder and/or impose

3

concurrent sentences, which would result in mandatory minimum sentences ranging from 25 years to 50 years. See K.S.A. 21-6620(c)(1)(A) and K.S.A. 21-6623 (mandatory minimum sentence for first-degree premeditated murder is life with no possibility of parole for 50 years); K.S.A. 21-5403(a)(2), (b)(2) (reckless second-degree murder is a severity level 2, person felony); K.S.A. 21-6804(a) (high number in sentencing guidelines grid for severity level 2 felony and criminal history score of E is 184 months).

Lopez claimed several factors existed that supported substantial and compelling reasons to depart from the presumptive sentence, including:

- his acceptance of responsibility for his actions as reflected by his guilty pleas;
- the nonviolent and unrelated nature of his prior criminal offenses;
- he suffers from multiple mental disorders;
- his early and continuous drug use impacted his brain structure and interfered with his ability to make decisions and understand the negative consequences of his behavior;
- his risk to commit future violence in prison was low;
- he had made rehabilitative efforts and had a desire for reformation; and
- the benefit to community safety interests by providing some hope of possible release, which encourages compliance and positive behavior.

In support of these factors, Lopez attached three medical reports to his motion. First, he relied on a psychological evaluation performed in October 2020 that described Lopez' reported family background, childhood, substance abuse, and medical history. The psychologist diagnosed Lopez with various drug and alcohol use disorders, generalized anxiety disorder, unspecified depressive disorder, and possible antisocial personality disorder. The psychologist also referred to research showing that childhood drug and alcohol abuse can affect brain functioning and development. Given the magnitude of Lopez' reported substance abuse starting at a young age, the psychologist found there was

4

a high likelihood that Lopez' brain functioning and development had been compromised. Further, the long-term effects of his reported methamphetamine use included "changes in brain structure and function, deficits in thinking and motor skills, increased distractibility, memory loss, aggressive or violent behavior, mood disturbances and possible psychosis."

Second, Lopez relied on an expert toxicologist's assessment of his lifetime substance use, including his use of intoxicating substances around the time of his arrest in March 2020. The assessment also referred to the adverse effects of drugs on the adolescent brain and the effects of long-term drug use, concluding that Lopez' brain function was negatively disrupted in March 2020 "in areas critical to cognition, perception, motivation, memory, learning, judgment, and behavioral control" and "contributed to his impulsive behavior, played a role in his poor decision-making, impetuous and reckless behavior, and interfered with his ability to understand the negative consequences of his behavior."

Third and finally, Lopez relied on a psychologist's forensic assessment of his risk of committing serious violent offenses during five decades of incarceration. The assessment concluded that Lopez' risk for serious violence over a long-term prison sentence was low, similar to other inmates convicted of murder.

At sentencing, the district court first noted Lopez committed the murders while he was on probation in another case, 18 CR 1659, for convictions of possession of methamphetamine and criminal possession of a weapon by a convicted felon. After Lopez stipulated to violating the terms of probation, the court revoked his probation and, based on him committing these new, "very extreme" person crimes, ordered Lopez to serve the original 31-month prison sentence, consecutive to any other case.

The district court then proceeded with sentencing in the present case. The court stated it had received several victim impact statements, and the prosecutor read a letter

5

from M.S.'s mother about M.S. and N.S. and how their deaths had affected her. After reading the letter, the prosecutor argued against Lopez' departure motion, noting he had already received leniency in exchange for his plea when the State agreed to take the death penalty off the table; emphasizing the domestic violence nature of the crimes that also involved killing his daughter; and pointing out that after the killings, Lopez left the victims to be discovered by M.S.'s mother a day and a half later.

In response, defense counsel argued several mitigating factors supported a departure sentence, specifically focusing on Lopez' anxiety and drug addiction in addition to his acceptance of responsibility and work toward rehabilitation. Lopez then personally addressed the family of M.S. and N.S., apologizing for his actions and expressing his remorse.

Before announcing Lopez' sentence, the district court explained that it had considered "the nature and circumstances of the crimes[;] the history, character, and condition of the defendant[;] the lowest minimum term which, in the opinion of the Court, is consistent with the public's safety[;] the needs of the defendant[;] and the seriousness of the defendant's crimes." The court then imposed the sentence requested by the State:  life without the possibility of parole for 50 years consecutive to a term of 184 months' imprisonment. The court also ordered these sentences to run consecutive to the sentence imposed as a result of Lopez' probation violation in Case No. 18 CR 1659.

After announcing Lopez' sentence, the judge addressed the departure motion:

> "As it relates to the motion to depart, these crimes were committed with extreme violence that directly led to two people losing their lives. After I read through the letters that were submitted, incorporating some of their comments, your intentional acts, Mr. Lopez, have not only ended these lives, but have affected a whole community of their friends and loved ones. These acts were committed in the home you shared by someone that they loved and trusted.

"Based upon all of that, your motion to depart is denied. The Court finds no substantial and compelling reasons to depart from the Kansas Sentencing Guidelines at this point in time."

Lopez brought this direct appeal over which we have jurisdiction. See K.S.A. 60-2101(b) (Supreme Court jurisdiction over direct appeals governed by K.S.A. 22-3601); K.S.A. 22-3601(b)(3)-(4) (direct appeals to Supreme Court allowed for life sentence and off-grid crimes); K.S.A. 21-5402(b) (first-degree murder is an off-grid person felony).

ANALYSIS

In Kansas, a sentencing court must order a defendant convicted of first-degree premeditated murder to a hard 50 life sentence unless, based on a review of mitigating circumstances, the judge finds substantial and compelling reasons to impose a departure sentence to life without the possibility of parole for 25 years. See K.S.A. 21-6620(c)(1)(A), (c)(2)(A); K.S.A. 21-6623; *State v. Zongker*, 319 Kan. 411, 433, 555 P.3d 698 (2024). In this context, we have interpreted the term "substantial" to mean something real and of substance, not imagined or ephemeral. And a compelling reason is one based on the facts of the case that forces a court to depart from the statutorily presumed sentence. 319 Kan. at 433.

We examine a district court's ruling on a departure motion for abuse of discretion. *State v. Young*, 320 Kan. 354, 359-60, 568 P.3d 498 (2025) (abuse of discretion standard applies to rulings regarding statutory and nonstatutory departure factors). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable, i.e., if no reasonable person would have taken the view adopted by the trial court; (2) it is based on an error of law, i.e., if the discretion is guided by an erroneous legal conclusion; or (3) it is based on an error of fact, i.e., if substantial competent evidence does not

7

support the court's factual findings. *State v. Goens*, 317 Kan. 616, 620, 535 P.3d 1116 (2023).

The party asserting the district court abused its discretion bears the burden of showing such abuse of discretion. *State v. Peters*, 319 Kan. 492, 497-98, 555 P.3d 1134 (2024). Lopez does not argue the court committed an error of law or fact, so he has waived or abandoned any such argument. See *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021) (An issue not briefed is deemed waived or abandoned.). Rather, Lopez focuses his arguments on the reasonableness of the court's decision to deny his motion. Although the issue statement in Lopez' brief suggests that he is also challenging the court's decision to impose consecutive sentences, he makes no separate argument about this aspect of his sentence, so it is also waived. See *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020) (A point raised incidentally in a brief and not argued therein is deemed waived or abandoned.).

K.S.A. 21-6625(a) sets forth a nonexclusive list of eight mitigating factors a court may consider when deciding whether to depart. Lopez argues that the following factors constitute substantial and compelling reasons for reducing his hard 50 mandatory minimum sentence to a hard 25.

1. *Remorse and acceptance of responsibility*

Lopez first argues that his remorse and acceptance of responsibility support a reduction of the minimum sentence. Although not listed under K.S.A. 21-6625, this court has recognized both reasons can be mitigating factors supporting a sentencing departure. See *State v. Morley*, 312 Kan. 702, 713-14, 479 P.3d 928 (2021) (acceptance of responsibility); *State v. McNabb*, 312 Kan. 609, 614, 478 P.3d 769 (2021) (remorse). Lopez points to the remorse he expressed at the sentencing hearing and notes that his guilty pleas helped the State and its witnesses avoid the significant time and expense

8

associated with trial preparation. Lopez acknowledges that he received benefits in exchange for his guilty pleas but asserts that even if this factor was not sufficient on its own to grant a departure, it should be considered along with the other proffered mitigating factors.

As Lopez concedes, he was afforded tremendous leniency by pleading guilty to the crimes. The prosecutor discussed this leniency at sentencing, which included reduced murder charges, the dismissal of two additional charges, and the State's agreement not to seek the death penalty. Given the advantages Lopez gained by accepting responsibility, a reasonable person could agree that Lopez' remorse and acceptance of responsibility did not rise to a substantial and compelling reason to depart.

2. *Nonviolent nature of Lopez' prior offenses*

A defendant's lack of "significant history of prior criminal activity" is a mitigating factor per K.S.A. 21-6625(a)(1). The parties agreed at sentencing that Lopez' criminal history score was E, based in part on nine prior nonperson felonies. Given this record of prior criminal activity, a reasonable person could conclude that Lopez did not lack a significant history of prior criminal activity and that the mitigating circumstance set forth in K.S.A. 21-6625(a)(1) did not apply.

But this court has recognized that "under some circumstances a defendant's criminal history can create a substantial and compelling reason for departure when something distinguishes that history from the present charges." *Young*, 320 Kan. at 361. To that end, Lopez emphasizes the unrelated nature of his prior convictions—largely drug and property crimes—to the present murder charges. He asserts that his criminal history does not reflect a pattern of violence, suggesting his recent crimes were out of character and likely linked to his mental issues and impaired decision-making ability.

Although Lopez' criminal history includes no person felony crimes, we cannot ignore the fact that at the time he committed the murders, Lopez was on probation for convictions of possession of methamphetamine and criminal possession of a weapon. Under those circumstances, the district judge could reasonably conclude that Lopez' significant history of prior criminal activity—which included his failure to abide by the law while on probation—was not a substantial and compelling reason to depart.

### 3. *Mental disorders and impaired brain function*

A defendant's psychological state can be a mitigating factor under K.S.A. 21-6625(a)(2) (crime committed while defendant was under the influence of extreme mental or emotional disturbances) and (a)(6) (capacity of defendant to appreciate criminality of conduct or to conform conduct to requirements of the law was substantially impaired).

Lopez claims that family dysfunction, anxiety, and depression caused his early and long-term drug use, which resulted in impaired brain function and development that affected his ability to make rational decisions or control his impulses and had the potential to cause aggressive or violent behavior, possible psychosis, paranoia, and delusion. Citing preliminary hearing witness testimony that on the night of the murders he appeared to be paranoid and high or coming down from a high, Lopez suggests his drug-addled brain could be the reason he committed the crimes for no apparent reason and renders him less culpable than "an individual who coolly plans and commits murder to benefit financially, or escape consequences for other behavior."

Lopez' arguments blaming his crimes on brain impairment caused by his drug use conflict with his earlier claim that he accepted responsibility for his actions. Additionally, Lopez pled guilty to the first-degree premeditated murder of M.S., agreeing with the district court that there was a factual basis for the plea and thereby admitting he was capable of forming a premeditated intent to kill. Thus, a reasonable person could

conclude that Lopez' mental disorders and impaired brain function did not constitute substantial and compelling reasons to depart from the presumptive sentence. See, e.g., *State v. Mitchell*, 320 Kan. 775, 778-80, 571 P.3d 604 (2025) (affirming denial of motion to depart from hard 50 sentence even though defendant presented evidence that he suffered from severe mental illness and extreme emotional disturbance at the time of the crimes); *State v. McLinn*, 307 Kan. 307, 348-49, 409 P.3d 1 (2018) (affirming denial of motion to depart from hard 50 sentence even though defendant presented evidence that she had no significant history of prior criminal behavior and she was under the influence of extreme mental or emotional disturbances); *State v. Murillo*, 269 Kan. 281, 289-90, 7 P.3d 264 (2000) (affirming denial of motion to depart from hard 40 sentence even though defendant argued he was under extreme mental or emotional disturbance due to drug use and lacked capacity to appreciate the criminality of his conduct).

4. *Low risk for future violence*

Next, Lopez argues that his low risk for future violence is a mitigating factor that the district court should have found supports his request for departure because it shows he is not a threat to society. This court has considered future dangerousness as a nonstatutory mitigating factor. See, e.g., *Young*, 320 Kan. at 362; *State v. Newman-Caddell*, 317 Kan. 251, 258, 527 P.3d 911 (2023).

In support of his argument, Lopez relied on a forensic psychological evaluation completed by Dr. Daniel Murrie, an expert in assessing the risk of future violence. The report suggested Lopez presented a low risk of committing serious violent misconduct during a lengthy term of incarceration, with risk levels comparable to similarly situated inmates convicted of murder. But the risk of violence assessment by Dr. Murrie focused on Lopez' propensity for violence in prison, not the community, undermining its usefulness in evaluating this factor. Notably, Dr. Murrie's finding that Lopez was at low risk for future violence appears to apply generally to all inmates convicted of murder and

11

is not entirely unique to Lopez. In assessing Lopez' individual risk of violence, Dr. Murrie identified a "significant incident" that occurred at the Sedgwick County jail. During that incident, Lopez and another inmate repeatedly punched, kicked, and stomped a third inmate who had "disrespected or taunted" Lopez. Although the assessment concluded that this single incident did not necessarily suggest a high risk of prison violence, it "certainly precludes a conclusion that Mr. Lopez poses negligible risk of prison violence" and "likely increases his otherwise low risk of violence in prison."

A reasonable person could agree that the risk of future violence assessment was not a substantial and compelling reason justifying departure.

5. *Rehabilitative efforts and beneficial effect of an earlier parole date*

Finally, Lopez points to his efforts at rehabilitation and the beneficial effect of earlier parole eligibility to support departure. He contends that an earlier parole date would motivate him to demonstrate positive behavior while incarcerated and better serve the goal of rehabilitation.

A defendant's amenability to rehabilitation, standing alone, will not constitute a substantial and compelling reason to depart from a presumptive sentence. But a district court can include this evidence in "the overall picture . . . if other factors warrant a departure." *State v. Theurer*, 50 Kan. App. 2d 1203, 1235, 337 P.3d 725 (2014). Given Lopez' failure to show that any of the other alleged mitigating factors warranted a departure, his rehabilitative potential cannot constitute a substantial and compelling reason to depart.

CONCLUSION

While Lopez offered evidence in support of the above mitigating factors, "the existence of a factor that is arguably mitigating does not necessarily mean that such a factor is 'substantial and compelling.'" *State v. Blevins*, 313 Kan. 413, 440, 485 P.3d 1175 (2021); see *Young*, 320 Kan. at 360 ("Even if a factor can be a mitigating factor, departure may not be justified."). In denying Lopez' departure motion, the district court noted that "these crimes were committed with extreme violence that directly led to two people losing their lives . . . in the home you shared by someone that they loved and trusted." Because a reasonable person could agree that Lopez failed to present substantial and compelling reasons to depart from the hard 50 sentence, the district court did not abuse its discretion in denying Lopez' departure motion.

The judgment of the district court is affirmed.

LUCKERT, J., not participating.